JAMES G. SMITH & ASSOCIATES, INC., APPELLANT, *v.* EVERETT ET AL., APPELLEES.

(No. 80AP-820—Decided March 12, 1981.)

*Mr. James E. Dodd,* for appellant.

*Harris, Strip, Fargo, Schulman & Hoppers Co., L.P.A.,* and *Mr. John W. Hoppers,* for appellees.

NORRIS, J. This matter is before us on the appeal of plaintiff-appellant, James G. Smith & Associates, Inc., from an October 6, 1980 order of the Franklin County Municipal Court rendering judgment in favor of plaintiff in the amount of $8,424 against defendant-appellee Dale F. Everett Company, Inc., and dismissing the plaintiff's complaint against defendant-appellee Dale F. Everett, individually. Plaintiff, a corporation which was engaged in providing advertising and public relations services, had sought to have both defendants held liable on an advertising account. No answer was filed on behalf of Dale F. Everett Company, Inc., and counsel for that defendant admitted in his opening statement that it was liable to plaintiff.

At trial, James G. Smith, who was engaged in business as the plaintiff corporation, testified that he had become acquainted with Mr. Everett through membership in a service club; that several years earlier he had provided advertising services to Everett for which he was paid by Everett; that in March of 1979 a proposal for radio advertising was prepared at Everett's request by plaintiff's

employees for Everett; that in his dealings with Everett he always felt he was dealing with Everett as an individual; that as a result of placing the advertising for Everett, plaintiff had to pay the radio stations for that advertising; and that Everett had not paid billings rendered by plaintiff for the advertising.

Robert J. Dean, a former employee of plaintiff, testified that Everett signed a space estimate and authorization form calling for radio advertising expenditures of $8,424; that Everett had not paid plaintiff for that amount; and that he felt he was dealing with Everett as an individual.

Everett testified that he formed a retail business known as "The Clubhouse"; that The Clubhouse was a "corporate d.b.a." of Dale F. Everett Company, Inc.; that The Clubhouse was not a corporation; that he conducted the negotiations with plaintiff to perform advertising services for The Clubhouse; that he signed the space estimate and authorization form; that neither he, Dale F. Everett Company, Inc., nor The Clubhouse had paid plaintiff's billings; that the billings were not paid because a bank had taken possession of all assets of Dale F. Everett Company, Inc., to satisfy a loan; that The Clubhouse had been registered with the Secretary of State as a trade name of Dale F. Everett Company, Inc.; that collection letters had been directed by plaintiff's counsel to both him and Dale F. Everett Company, Inc.; and that he had never promised to pay debts of the corporation.

The record is void of any testimony concerning there being any mention of Dale F. Everett Company, Inc., at or before the signing of the space estimate and authorization by Everett.

The exhibits included a "Radio Proposal For The Clubhouse"; a certification from the Secretary of State that his office had approved and filed the application of "Dale F. Everett Co." for the registration of the name "The Clubhouse, Inc.," in accordance with R.C. 1329.01 to 1329.10,

and that that registration would expire on May 11, 1978; billings from plaintiff addressed to The Clubhouse, Inc.; and a form titled "Space Estimate And Authorization" dated March 15, 1979, and signed "THE CLUBHOUSE, Client, By Dale F. Everett." The latter exhibit purported to authorize plaintiff to purchase $8,424 of radio advertising time and stated that the client assumed "final responsibility to the respective vendor's [sic]."

The trial court's decision includes this language:

"* * * Dale F. Everett, contends he never did business as The Clubhouse, Inc. in other than a corporate capacity and from the evidence the court finds he never represented that he was purchasing advertising services as an individual, he was never asked by plaintiff to bind himself as an individual and never represented that he, individually, would pay the debts of the corporation.

"As a general rule, one who signs a contract as a corporate agent has a duty to advise the other party to the contract that he is not acting as an individual but is acting as an agent for a corporation if he wishes to avoid personal liability.

"The evidence in this case strongly indicates plaintiff intended to deal with a corporate client as from the outset the billings were made to a corporation. Plaintiff has failed to prove by a preponderance of the evidence that the indebtedness was in fact incurred by the individual defendant."

Plaintiff asserts three assignments of error which are interrelated. The dispositive issue can be summarized as follows: Whether the trial court erred in finding, under the circumstances of this case, that plaintiff intended to contract only with Dale F. Everett Company, Inc., for providing advertising services.

Resolution of the issue is controlled by the law of agency. Appellee Everett claims that plaintiff knew it was dealing with a corporation, arguing, in effect, that, when he signed the authorization

"THE CLUBHOUSE, Client, By Dale F. Everett," plaintiff was placed on notice that it was dealing with Everett as an agent. Everett also cites other evidence which indicates plaintiff knew that Everett was transacting business for a corporation and was not acting in his individual capacity, such as its having sent statements to "The Clubhouse, Inc." The problem with this position is that The Clubhouse was not, in fact, a corporation; and, thus, Everett must rely upon Dale F. Everett Company, Inc., as his principal if he is to establish that an agency existed and that he is not liable on a contract he negotiated as agent for a corporation.

The circumstances presented by this case are not unlike those which give rise to frequent litigation — a person incorporates his business, incurs indebtedness in running the business which subsequently fails, and then is confronted by claims of creditors who do not wish to be limited in their recovery to inadequate or nonexistent corporate assets.

It is, of course, true that by incorporating his business, a person may escape liability for debts of the business, under certain circumstances. Whether or not he will escape personal liability for debts of the business is most often a question for the law of agency. A corporation, being an artificial person, can act only through agents. When a person incorporates his business and proceeds to conduct business on behalf of the corporation, he is acting as an agent for the corporation. But like any other agent, he may still incur personal liabilities. Thus, he will avoid personal liability for debts of the corporation only if he complies with the rules which apply in all agency relationships — he must so conduct himself in dealing on behalf of the corporation with third persons that those persons are aware that he is an agent of the corporation and it is the corporation (principal) with which they are dealing, not the agent individually.

Because the authorities are sometimes confusing or incomplete in their treatment of the subject, it would be well to summarize the situations under which the Ohio cases hold that an agent may or may not be held personally liable to the persons with whom he deals:

(1) *Where the agent is acting for a disclosed principal, i.e.,* where both the existence of the agency and the identity of the principal are known to the person with whom the agent deals. An agent who acts for a disclosed principal and who acts within the scope of his authority and in the name of the principal is ordinarily not liable on the contracts he makes. *Foster* v. *Lee Motors, Inc.* (1956), 102 Ohio App. 10 [1 O.O.2d 476]; *Dobell* v. *Koch* (1921), 16 Ohio App. 41. The rationale for this rule is that in this situation the third party intends to deal with the principal, not his agent.

(2) *Where the principal is only partially disclosed, i.e.,* where the existence of an agency is known to the third person, but the identity of the principal is not known. Here, the agent is held to be a party to the transaction and is liable to the third party, as is the agent's principal. *Grob* v. *Myers* (1926), 4 Ohio Law Abs. 349. See, also, *Givner* v. *United States Hoffman Machinery Corp.* (1935), 49 Ohio App. 410. The reason for the rule is that since the identity of the principal is not known to the third party, he ordinarily will not be willing to rely wholly upon the credit and integrity of an unknown party.

(3) *Where the principal is undisclosed, i.e.,* where neither the existence of an agency nor the identity of the principal is known to the third party. Here, the dealing is held to be between the agent and the third party, and the agent is liable. See *Davis* v. *Harness* (1882), 38 Ohio St. 397. Should the identity of the principal be discovered, he may be held liable by the third party who must elect to pursue either the principal or agent — both are not liable. See *Bader* v. *Corbin* (1952), 95 Ohio App. 249 [53 O.O. 188]. The rationale for the agent's liability is that since the third party was unaware of the agency, he

intended to deal with the agent as an individual, not as an agent.

(4) *Where there is a fictitious or nonexistent principal, or the principal is without legal capacity or status.* If an agent purports to act on behalf of such a "principal," the agent will be liable to the third party as a party to the transaction. See *Trust Co.* v. *Floyd* (1890), 47 Ohio St. 525; *Seasongood & Mayer* v. *Riddle* (1923), 18 Ohio App. 88. See, also, *Brawley* v. *Anderson* (1947), 80 Ohio App. 15 [35 O.O. 410]. One cannot be an agent for a nonexistent principal; there is no agency. This situation frequently arises where a corporate promoter enters into contracts prior to the time the corporation is actually incorporated. See *Trust Co.* v. *Floyd, supra.*

In the case before us, there is no evidence that the plaintiff knew Everett was acting on behalf of Dale F. Everett Company, Inc.

Clearly, Dale F. Everett Company, Inc., was not a disclosed principal. Construing the evidence most favorably to Everett, plaintiff knew that an agency existed, but did not know the identity of the principal, Dale F. Everett Company, Inc. The only "principal" identified by Everett was The Clubhouse, which was without legal capacity or status. At best, then, Everett was dealing on behalf of a partially disclosed principal or a principal without legal capacity or status. In either event, he was a party to the contract with plaintiff and was personally liable on that contract.

At trial, it was admitted that Dale F. Everett Company, Inc., was liable on the contract. This admission and the judgment rendered by the trial court against Dale F. Everett Company, Inc., are consistent with a determination that Dale F. Everett Company, Inc., was a partially disclosed principal.

However, for the reasons set out above, the order of the trial court dismissing the complaint against Dale F. Everett, individually, is contrary to law and against the manifest weight of the evidence, and that portion of the order of the trial court must be reversed.

The judgment against Dale F. Everett Company, Inc., is affirmed; plaintiff's three assignments of error are sustained; the order of the trial court dismissing the complaint against Dale F. Everett, individually, is reversed; and this cause is remanded to the trial court for further proceedings according to law and consistent with this decision.

*Judgment accordingly.*

WHITESIDE and McCORMAC, JJ., concur.