OPINION
{¶ 1} This appeal arises from the Lake County Court of Common Pleas wherein appellants, Kyle M. Lulow ("Lulow") and Robert Lupo ("Lupo"), appeal the trial court's finding of fraud against both as officers of a corporation and awarding appellees compensatory and punitive damages.
 {¶ 2} Appellants were officers of Diversified Corporation ("Diversified"), an Ohio corporation. Diversified ceased operations prior to trial. Lulow was the President, and Lupo the Vice President. On June 17, 1999, Diversified and appellee, Medscan Diagnostics Imaging, Inc. ("Medscan"), entered into a contract whereby Diversified would sell a Siemens Fixed MRI System ("MRI") to Medscan for the purchase price of $1,185,000. The contract provided for an initial down payment of $59,250, followed by a series of payments to be paid as the contract progressed. Dr. Charles Bradford, representing Medscan, testified at trial that Lulow informed him that the large down payment was required to hold the machine for Medscan.
 {¶ 3} The contract was drafted by Diversified and contained several provisions calling for verification and inspection of the MRI as well as provisions detailing installation and service of the MRI by its manufacturer, Siemens, although Diversified was not an authorized agent for the Siemens Corporation.
 {¶ 4} The time for performance on the verification and inspection provisions of the contract came and went without Diversified performing any of the steps in the contract. Deadlines for each action were extended while Medscan attempted to verify that the MRI existed and that it was a new, original machine. Diversified provided no independent verification to Medscan of the authenticity or even the existence of the MRI. However, they sent a series of written confirmations to Medscan during this time, which were allegedly from Siemens, confirming that the MRI existed and was according to Medscan's specifications. After the seventh extended deadline passed without performance, Medscan declared a breach of contract and attempted to recover the down payment of $59,250, pursuant to the written contract. Lulow informed Medscan that the down payment was not immediately recoverable because it had been sent on to another company, which was not returning it to Diversified. However, Lulow subsequently testified at trial that the money was never given to any third party.
 {¶ 5} Diversified then contacted Siemens directly in order to attempt to secure an MRI for Medscan. Siemens quoted a purchase price that was $50,000 more than the original contract price with Diversified. Lulow testified that Siemens would provide the pricing only if Diversified agreed to sign a release agreement, including a covenant not to sue. Lulow also testified that he and Bradford had agreed that Diversified would keep the down payment as a condition of Medscan getting the MRI from Siemens with the special pricing. Bradford denied that this deal was ever made.
 {¶ 6} On March 31, 2001, Medscan filed a complaint against Diversified and its corporate officers, Lupo and Lulow, asserting breach of contract, fraud, and conversion. A default judgment was granted to Medscan against Diversified at the beginning of trial. On November 16, 2001, a bench trial was conducted against the individual corporate officers.
 {¶ 7} The trial court issued a judgment on December 13, 2001, finding in favor of Medscan against Lupo and Lulow for compensatory damages, punitive damages, attorney fees, and costs. Specifically, Medscan was awarded $59,250 plus 18 percent interest from September 28, 1999, which was the date of the initial deposit by Medscan on the contract, and $50,000, plus 10 percent interest from the date of judgment, which represented the difference between the original contract price and what Medscan actually paid for the MRI. Punitive damages in the amount of $25,000 were also awarded, as well as attorney fees in the amount of $11,865.
 {¶ 8} Appellants subsequently appealed, citing a single assignment of error:
 {¶ 9} "The trial court erred in finding officers of a corporation to be personally liable who were not participants in any wrongful act."
 {¶ 10} Appellants argue that they are not liable for the corporation's breach of a contract to deliver equipment and, as such, should not have been found liable by the trial court. Appellants cite Young v. Featherstone Motors for the notion that corporate officers are generally not personally liable for torts committed by the corporation unless the officer directly took part in the tort or directed it to be done.[1]
 {¶ 11} Lupo argues that he signed the contract on behalf of Diversified but never actively negotiated with Medscan. Lupo also contends that there was no evidence presented at trial demonstrating his participation in any tort; thus, Lupo cannot be held personally liable. Lulow contends that Medscan failed to sufficiently set forth evidence to support each element of the claim for fraud asserted against him. Thus, appellants essentially argue insufficiency of evidence at trial.
 {¶ 12} In a civil proceeding, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court."[2]
Therefore, this court may not substitute its judgment for that of the finder of fact if the judgment is supported by competent, credible evidence relating to all elements of the case.[3]
 {¶ 13} Appellants were found personally liable for fraud. A successful cause of action for fraud must include five elements: "(1) a false representation; (2) knowledge by the person making the representation that it is false; (3) the intent by the person making the representation to induce the other to rely on that representation; (4) rightful reliance by the other to his detriment; [and] (5) an injury as a result of the reliance."[4]
 {¶ 14} It is well established under Ohio law that corporate officers will generally not be held individually liable on contracts they have entered into on behalf of the corporation.[5] However, corporate officers may be found personally liable for fraud even though the corporation has also been found liable, if it is concluded that the officers actively participated.[6] Thus, corporate officers may be found individually liable when:
 {¶ 15} "(1) control over the corporation was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong."[7]
 {¶ 16} It is axiomatic under Ohio law that the trial court, as finder of fact, is best able to observe the demeanor, gestures, and voice inflections of witnesses in determining their credibility.[8] In the case sub judice, the trial court did find that Lupo and Lulow exercised such complete control over Diversified that it had no separate existence of its own. Both Lupo and Lulow claim on appeal that the evidence presented was insufficient. However, a review of the transcript reveals that the trial court clearly considered all of the evidence before it, including the numerous confirmations and correspondence between the parties, testimony from Lulow, Bradford, and a representative from Siemens; and, based on all evidence before it, the trial court concluded that Medscan proved, by clear and convincing evidence, all of the elements of fraud and that the corporate veil should be pierced. The law in Ohio is clear that corporate protection will not be afforded to corporate officers who commit fraud, even if it is done in their official capacity.
 {¶ 17} Appellants also contend that punitive damages cannot be awarded against corporate officers in the absence of fraud. However, as noted above, the trial court found that Lupo and Lulow were personally liable for fraud, and, thus, punitive damages are permissible.
 {¶ 18} Thus, upon review, we hold that the trial court's judgment is supported by competent, credible evidence going to all of the elements of fraud.
 {¶ 19} Based on the foregoing, appellants' assignment of error is without merit, and the trial court's judgment is affirmed.
Judgment affirmed.
Ford, P.J. and Rice, J., concur.
[1] Young v. Featherstone Motors, Inc. (1954),97 Ohio App. 158, 171.
[2] C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus.
[3] Id.
[4] Korodi v. Minot (1987), 40 Ohio App.3d 1, 3.
[5] Hommel v. Micco (1991), 76 Ohio App.3d 690, 697, citingCentennial Ins. Co. of New York v. Vic Tanny Internatl. ofToledo, Inc. (1975), 46 Ohio App.2d 137.
[6] Centennial Ins. Co. of New York, at 141.
[7] Belvedere Condominium Unit Owners' Assn. v. R.E. RoarkCos., Inc. (1993), 67 Ohio St.3d 274, paragraph three of the syllabus.
[8] Seasons Cole Co. v. Cleveland (1984), 10 Ohio St.3d 77,80.