OPINION
{¶ 1} Mr. Robert Lapuh ("Mr. Lapuh"), First Class Moving, Inc. ("First Class Moving") and Firemen Moving Storage, Inc. ("Firemen Moving 
Storage") appeal from a judgment of the Lake County Court of Common Pleas awarding damages to David H. Olszens[1] and Christine T. Olszens ("the Olszens") following a bench trial in connection with their employment of Mr. Lapuh for their move from Ohio to Nevada. For the following reasons, we affirm. *Page 2 
 {¶ 2} Substantive Facts and Procedural History
 {¶ 3} The record reflects the Olszens contracted with Mr. Lapuh, a Painesville City fire fighter and President and sole shareholder of First Class Moving, to move their belongings from Willoughby, Ohio to Henderson, Nevada, in early 2004. After Mr. Lapuh surveyed the content of the Olszens' household, he provided an initial estimate of $4,635 for the move, but later lowered the price to $3,900.
 {¶ 4} On April 29, 2004, Mr. Lapuh's truck arrived to load the Olszens' belongings but the truck's weight limit was reached before all the Olszens' belongings could be loaded. Mr. Lapuh and the Olszens then reached an agreement to have the remaining items moved for an additional $1,350. The Olszens objected to the additional sum but in order to obtain their possessions expeditiously, they agreed to pay the additional amount.
 {¶ 5} On June 27, 2004, the second delivery was made to the Olszens in Nevada. On that day, Mr. Olszens tendered a check for $1,350 but later retrieved it from the moving truck when he discovered that much of the property being delivered was damaged and many items were missing. A third and final delivery arrived on August 12, 2004.
 {¶ 6} Several items of the Olszens' belongings were damaged during the move, including a mountain bike, a fire pit, a motorcycle, and an air tank compressor. In addition, some items were missing, including a Kirby vacuum cleaner and the Olszens' wedding photos, but most notably, a 9' by 12' handmade one-of-a-kind Navaho wool rug, a wedding gift to the Olszens. *Page 3 
 {¶ 7} The Olszens submitted a claim to First Class Moving's insurance company, Auto-Owners, with an estimate of the repair cost for the damaged items and the replacement value of the lost items. Although the insurance company covered much of the Olszens' loss, they filed a complaint in the Lake County Court of Common Pleas to recover the balance of their damages.[2] A bench trial followed.
 {¶ 8} At trial, Mr. Olszens testified that Mr. Lapuh represented himself as the owner of two moving companies, First Class Moving, and Firemen Moving Storage. Mr. Olszens testified that he selected Mr. Lapuh because they knew each other causally in high school, and Mr. Lapuh gave them a reasonable price and his personal guarantee that he would "take care of everything" for them.
 {¶ 9} The record includes a bill of lading dated April 29, 2004, issued by First Class Moving for the price of $3,900. It also contains correspondence dated April 30, 2004, on the letterhead of "Firemen Moving Storage" indicating a "Balance for Relocation" of $1,350. That document stated: "Please find the following balance [$1,350] for the remaining items still to be scheduled to complete the relocation to Las Vegas." Although Mr. Lapuh testified at trial that the document did not originate from him and suggested it could have been fabricated, the trial court found this correspondence on Firemen Moving Storage letterhead to be authentic and that it memorialized the parties' agreement regarding the additional contract price of $1,350. *Page 4 
 {¶ 10} The record in addition shows that Mr. Lapuh was the sole owner of First Class Moving, which was incorporated January 17, 1996, but ceased doing business at the end of 2004. The record further shows Firemen Moving Storage was incorporated on September 15, 2004, after the negotiation and performance of the contract at issue. At trial Mr. Lapuh explained that the new company had a different business model in that it obtained its work primarily through brokers and that his wife is the sole shareholder and president of the new company.
 {¶ 11} Following the trial, the court issued a judgment entry in favor of the Olszens. The judgment entry stated:
 {¶ 12} "Based upon the above-referenced testimony and the court's impartial weighing and determination of credibility of the respective parties and witnesses, the court finds that the defendant, Robert Lapuh, made personal representations and guarantees to the plaintiffs and that the plaintiffs relied upon them to their detriment.
 {¶ 13} "The court further finds that the owner and/or agent of both Firemen Moving Storage and First Class Moving, Inc., and as a bailee of the property, Mr. Lapuh was responsible for any damage and for the negligent acts of his employees.
 {¶ 14} "The court further finds the plaintiffs suffered damage as a result of this move in the form of damaged and missing possessions * * *
 {¶ 15} "Finally, the court finds that the defendant, Robert Lapuh, acting as the owner and/or agent of both First Class Moving, Inc. and Firemen Moving Storage, has bound the defendant, First Class Moving, Inc., and himself contractually with the plaintiffs." *Page 5 
 {¶ 16} Based on these findings of fact, the trial court determined that Firemen Moving Storage is not liable because it was not incorporated until September 15, 2004, after the performance of the contract in dispute. However, the trial court determined that both First Class Moving and Mr. Lapuh are liable to the Olszens.
 {¶ 17} As to First Class Moving, the trial court concluded it is liable to the Olszens for a breach of contract, negligence, and bailment liability pursuant to R.C. 1307.01 and R.C. 1307.09
 {¶ 18} As to Mr. Lapuh, the trial court found him personally liable on several grounds. First, the court found that he held himself out as an agent and owner of Firemen Moving Storage and negotiated an increase in the contract price in the name of Firemen Moving Storage, a non-existing corporate entity at the time. Therefore, the court concluded Mr. Lapuh personally assumed the contracted obligations and is liable for the damages resulting from a breach of the contract.
 {¶ 19} Second, the trial court cited this court's decision inMedscan Diagnostics Imaging, Inc. v. Diversified Corporation, Lake App. No. 2002-L-013, 2004-Ohio-383 to find Mr. Lapuh personally liable. In that case, we applied the three-prong test for piercing the corporate veil set forth in Belvedere Condominium Unit Owners' Assn. v. R.E. RoarkCos., Inc. (1993), 67 Ohio St.3d 274. Applying that test: (1) the trial court determined that Mr. Lapuh's control over First Class Moving was so complete that the corporation had no separate mind, will, or existence of its own; (2) Mr. Lapuh's control over First Class Moving was exercised in such a way as to commit fraud or an illegal act against the Olszens who are seeking to disregard the corporate entity; and (3) injury and unjust loss resulted to them from such control and wrong. *Page 6 
 {¶ 20} Third, the trial court concluded Mr. Lapuh fit the statutory definition of "warehouseman" under R.C. 1307.01 and was personally liable as such, because he failed to exercise reasonable care required by R.C. 1307.09 in moving the Olszens' belongings.
 {¶ 21} Fourth, the trial court determined that Mr. Lapuh had a duty to personally supervise the loading, storage, transportation, handling and delivery of the Olszens' possessions but failed to exercise a reasonable due care, and therefore is personally liable for his negligence.
 {¶ 22} As a result of these findings, the court held that First Class Moving and Mr. Lapuh are jointly and severally liable to the Olszens for lost and damaged items during the move in the amount of $15,366.01, to be reduced by amounts already paid to the Olszens by Mr. Lapuh's insurance carrier and to be further offset by the balance of the contract price the Olszens owed to Mr. Lapuh.
 {¶ 23} Mr. Lapuh, First Class Moving, and Firemen Moving Storage filed a timely appeal. Their assignments of errors state:
 {¶ 24} "[1.] The trial court erred to the prejudice of defendant-appellant, Robert Lapuh, in piercing the corporate veil and finding the defendant liable.
 {¶ 25} "[2.] The trial court erred to the prejudice of defendant-appellant, Robert Lapuh, in finding that Plaintiff satisfied Prong 1 of the `Belvedere' test.
 {¶ 26} "[3.] The trial court erred to the prejudice of defendant-appellant, Robert Lapuh, in finding that Plaintiff satisfied Prong 2 of the `Belvedere' test.
 {¶ 27} "[4.] The trial court erred to the prejudice of defendant-appellant, Robert Lapuh, in finding that Plaintiff satisfied Prong 3 of the `Belvedere' test. *Page 7 
 {¶ 28} "[5.] The trial court erred to the prejudice of defendant-appellant, Firemen Moving Storage, Inc., in finding the corporation was a success-in-interest to First Class Moving, Inc.
 {¶ 29} "[6.] For other errors manifest upon the fact of the record and prejudicial to the rights of the defendant-appellants."
 {¶ 30} Our review of the trial court's judgment entry shows that the court did not make the specific finding that Firemen Moving Storage was a successor-in-interest to First Class, nor did it determine Fireman Moving Storage's liability based on that theory. Therefore, we will not address appellants' fifth assignment of error. We do not address their sixth assignment of error either, as it does not raise any specific error for our consideration.
 {¶ 31} In the remaining assignments of error, appellants' sole claim is that the trial court erred in piercing the corporate veil regarding First Class Moving to find him personally liable for the Olszens' losses. In their first assignment of error, they cite the authority ofNorth v. Higbee Co. (1936), 131 Ohio St. 507 for this claim. In their second, third, and fourth assignments of error, they citeBelvedere for the same claim.
 {¶ 32} Standard of Review
 {¶ 33} In a civil proceeding, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C. E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, 280-281 (citations omitted).
 {¶ 34} Piercing the Corporate Veil *Page 8 
 {¶ 35} Appellants contend the trial court erred in applying the test for piercing the corporate veil regarding First Class Moving to find Mr. Lapuh personally liable in the instant matter. The court inBelvedere explained the concept of piercing the corporate veil as follows:
 {¶ 36} "A fundamental rule of corporate law is that, normally, shareholders, officers, and directors are not liable for the debts of the corporation. An exception to this rule was developed in equity to protect creditors of a corporation from shareholders who use the corporate entity for criminal or fraudulent purposes. That a corporation is a legal entity, apart from the natural persons who compose it, is a mere fiction, introduced for convenience in the transaction of its business, and of those who do business with it; but like every other fiction of the law, when urged to an intent and purpose not within its reason and policy, may be disregarded.' Under this exception, the `veil' of the corporation can be `pierced' and individual shareholders held liable for corporate misdeeds when it would be unjust to allow the shareholders to hide behind the fiction of the corporate entity."Belvedere at 287 (internal citations omitted).
 {¶ 37} In Belvedere, the Supreme Court of Ohio revised the test for piercing the corporate veil first established in Higbee. The court set forth a new three-part test in Belvedere as follows:
 {¶ 38} "[T]he corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to *Page 9 
disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." Belvedere at 289.
 {¶ 39} In order to disregard the corporate entity or pierce the corporate veil, all three prongs of the test must be demonstrated by the evidence. Here, the trial court summarily determined in its judgment entry that all three prongs were met in his dealings with the Olszens on behalf of First Class Moving, without pointing to any specific testimony or evidence presented at trial to support these determinations. Without any explanations or analysis, the trial court stated:
 {¶ 40} "The court finds that the foregoing statutory[3] criteria were met: (1) Defendant Lapuh's control over First Class Moving, Inc. was so complete that the corporation had no separate mind, will, or existence of its own; (2) Defendant Lapuh's control over the corporation was exercised in such a way as to commit fraud or an illegal act against the plaintiffs who are seeking to disregard the corporate entity; and (3) injury and unjust loss resulted to the plaintiffs from such control and wrong." (Footnote added.)
 {¶ 41} Upon our review of the record, we are not convinced the Olszens introduced sufficient evidence to pierce the corporate veil regarding First Class Moving. More specifically, the evidence contained in the record does not demonstrate the second prong of the Belvedere test, namely, that Mr. Lapuh's control over First Class Moving was exercised in such a way as to commit fraud or an illegal act against the *Page 10 
Olszens. It is undisputed First Class Moving failed to deliver the Olszens' belongs as contracted. However, the record does not reflect Mr. Lapuh's "control over First Class was exercised in such a way as to commit fraud or illegal act" against the Olszens. As theBelvedere test is conjunctive, we cannot conclude that the trial court's judgment regarding Mr. Lapuh's individual liability based on piercing the corporate veil doctrine is supported by competent, credible evidence. Appellants' third assignment of error is meritorious.[4]
 {¶ 42} Mr. Lapuh's liability as a Purported Agent of a Non-existingCorporation
 {¶ 43} Concluding Mr. Lapuh does not incur personal liability on a theory of piercing the corporate veil does not end our inquiry in this appeal, because the trial court found him to be liable on several other grounds. This court is persuaded in particular by the trial court's determination that Mr. Lapuh is personally liable because he held himself out to be the owner and operator of not only First Class Moving but also Firemen Moving Storage, the latter being a non-existing business entity at the time.
 {¶ 44} As the court in James G. Smith Associates, Inc. v.Everett (1981), 1 Ohio App. 3d 118 explains:
 {¶ 45} "[B]y incorporating his business, a person may escape liability for debts of the business, under certain circumstances. Whether or not he will escape personal liability for debts of the business is most often a question for the law of agency. A *Page 11 
corporation, being an artificial person, can act only through agents. When a person incorporates his business and proceeds to conduct business on behalf of the corporation, he is acting as an agent for the corporation. But like any other agent, he may still incur personal liabilities. Thus, he will avoid personal liability for debts of the corporation only if he complies with the rules which apply in all agency relationships-he must so conduct himself in dealing on behalf of the corporation with third persons that those persons are aware that he is an agent of the corporation and it is the corporation (principal) with which they are dealing, not the agent individually." Id. at 120.
 {¶ 46} As the court in Everett summarized, there are several circumstances where the courts held an agent personally liable to the persons with whom he deals. An agent is liable (1) "[w]here the principal is only partially disclosed, i.e., where the existence of agency is known to the third person, but the identity of the principal is not known." Id. An agent is liable (2) "[w]here the principal is undisclosed, i.e., where neither the existence of an agency nor the identity of the principal is known to the third party." Id. "Here, the dealing is held to be between the agent and the third party, and the agent is liable." Id.
 {¶ 47} An agent is also liable, as pertinent to the instant case, (3) [w]here there is a fictitious or non-existent principal, or theprincipal is without legal capacity or status." Id. at 121 (emphasis added). "If an agent purports to act on behalf of such a `principal,' the agent will be liable to the third party as a party to the transaction." Id. (citations omitted). "One cannot be an agent for a nonexistent principal; there is no agency. This *Page 12 
situation frequently arises where a corporate promoter enters into contracts prior to the time the corporation is actually incorporated." Id. (citation omitted).
 {¶ 48} See, also, Stryker Farms Exch. v. Mytczynskyj (1998),129 Ohio App.3d 338, 341-342 (an agent may only be held personally liable for the debt of his principal if the principal is undisclosed, partially disclosed, or is fictitious or non-existent); C-Z Constr. Co. v.Russo (July 23, 2003), 7th Dist. No. 02 CA 148, 2003-Ohio-4008 (the general rule is that an agent is personally liable for contracts entered into on behalf of an undisclosed, fictitious or nonexistent principal).
 {¶ 49} Here, the record reflects conflicting testimony. Mr. Olszens testified that Mr. Lapuh represented himself as the owner of both First Class Moving and Firemen Moving Storage during the contract negotiations, and also produced a correspondence dated April 30, 2004, on Firemen Moving Storage's letterhead, which indicated an increase of contract price for $1,350. Mr. Lapuh stated that the contract for the move was only between First Class Moving and Mr. Olszens. He also testified that the April 30, 2004, did not originate from him, suggesting it was fabricated.
 {¶ 50} The trial court found that Mr. Lapuh had held himself out as the owner and operator of both First Class Moving and Firemen Moving Storage and, acting as such, entered into agreements with Mr. Olszens in each of the entities' names. In particular, the trial court found the April 30, 2004 correspondence on the letterhead of Firemen Moving 
Storage to be authentic.
 {¶ 51} The trial court, as the trial of fact, is best able to "view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony," Seasons Coal Co. v. Cleveland *Page 13 
(1984), 10 Ohio St.3d 77, 80. Therefore, we will give deference to its finding that, based on Mr. Olszens' testimony and the April 30, 2004 correspondence on Firemen Moving Storage's letterhead, Mr. Lapuh had acted in the name of Firemen Moving Storage in his contract negotiations with the Olszens and in particular entered into an agreement on behalf of Firemen Moving Storage to complete the Olszens' move for an additional price.
 {¶ 52} Given its finding, the trial court's conclusion that Mr. Lapuh personally assumed the Firemen Moving Storage's contractual obligations is warranted. That entity was in its pre-corporate form and non-existent at the time of the contract. Because Mr. Lapuh cannot be an agent of a principal which was itself without legal capacity or status, he is liable to the third party as a party to the instant transaction hi mself. Everett at 121.
 {¶ 53} In conclusion, although the record does not reflect sufficient evidence to support the trial court's determination of Mr. Lapuh's individual liability based on the doctrine of piercing the corporate veil, we conclude its determination of Mr. Lapuh's individual liability based on the law of agency is supported by competent, credible evidence. Therefore, we affirm the trial court's judgment.
 {¶ 54} The judgment of the Lake County Common Pleas Court is affirmed.
TIMOTHY P. CANNON, J., concurs,
DIANE V. GRENDELL, P.J., concurs in judgment only.
[1] The plaintiffs' surname name is "Olzens" but was misspelled in the complaint as "Olszens".
[2] The trial court found the only real difference between the Olszens' in-court claim of loss and the insurance company's valuation of loss is the value of the Navajo rug. The Olszens produced a receipt showing the purchase price of the rug at $4,576. The Olszens testified that they have made attempts to assess the replacement value of the rug without success because it is one-of-a-kind. They estimated a replacement value of the rug between $12,000 and $20,000. The trial court found this estimate to be speculative and instead found the reasonable value of the rug to be $8,000. On appeal, Mr. Lapuh does not contest this valuation of the rug by the trial court.
[3] The court misstated the criteria here as statutory criteria when it actually applied the criteria for piecing the corporate veil adopted by this court in Medscan Diagnostics Imaging, Inc. v. DiversifiedCorporation, Lake App. No. 2002-L-013, 2004-Ohio-383. This is the same test set forth in Belvedere.
[4] Appellants' second and fourth assignments of error address the first and third prongs of the Belvedere test respectively. Since we conclude the evidence does not demonstrate the second prong of this conjunctive test, the second and fourth assignments of error are moot. We also do not separately address the first assignment error, because under the first assignment of error appellants make the same claim regarding the impropriety of piercing the corporate veil in this case, but citing the authority of Higbee instead. Since we already find their piercing the corporate veil claim to have merit based on the third assignment of error (second prong of the Belvedere test), the first assignment is also moot. *Page 1