[Cite as *Barto v. Boardman Home Inspection*, 2015-Ohio-5210.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**TRUMBULL COUNTY, OHIO**


STEVE J. BARTO, et al., : **O P I N I O N**

          Plaintiffs-Appellants, :

    - vs - : **CASE NO. 2014-T-0090**

BOARDMAN HOME INSPECTION, INC., :
et al.,

         :

          Defendants-Appellees. :

         :


Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2012 CV 944.

Judgment: Affirmed.


*Randil J. Rudloff,* Guarnieri & Secrest, P.L.L., 151 East Market Street, P.O. Box 4270, Warren, OH 44482 (For Plaintiffs-Appellants).

*Scott C. Essad,* 721 Boardman-Poland Road, Suite 201, Youngstown, OH 44512 (For Defendants-Appellees).


CYNTHIA WESTCOTT RICE, J.

{¶1} Appellants, Steve J. Barto and Cherilyn Barto, appeal the judgment of the Trumbull County Court of Common Pleas granting in part the motion of appellees, Boardman Home Inspection, Inc. and David Shevel, for summary judgment on appellants' claims for negligence and violation of Ohio's Consumer Sales Practices Act. For the reasons that follow, we affirm.

{¶2} The statement of facts that follows is based on the parties' depositions, excerpts of which were submitted on summary judgment. On February 7, 2011, the Bartos retained Boardman Home Inspection, Inc. ("Boardman") to perform a home inspection on a manufactured home they wanted to purchase in Hubbard, Trumbull County, Ohio. The parties signed a contract entitled, "Pre-Inspection Agreement," which outlined the areas of the home that would be inspected; set forth the fee for the inspection; and included a limitation-of-liability clause.

{¶3} By its terms, the contract between Boardman and the Bartos limited the liability of Boardman, "its agents and employees" to the amount of the fee paid by the Bartos for the home inspection and inspection report. The total fee was $500. This included the fee for a radon test, which was $150, and the cost of the home inspection/ report, which was $350. Thus, the Bartos' damages were capped by contract at $350.

{¶4} David Shevel testified that he is the sole shareholder, owner, and employee of Boardman, an Ohio corporation.

{¶5} Mr. Shevel performed the home inspection for the Bartos on February 7, 2011. With respect to the roof, Mr. Shevel testified that, based on his visual inspection, the pitch or slope of the roof was about four inches per foot. He said the asphalt shingles on the roof were appropriate because such shingles are effective to divert rain water from a roof if the pitch of the roof is at least two inches per foot. He said that if the pitch of a roof is less than two inches per foot, some other roofing material should be used. Because Mr. Shevel concluded the pitch of the subject roof was more than two inches per foot, he did not indicate in his report that the asphalt shingles presented a problem. The only evidence presented by the Bartos disputing Mr. Shevel's testimony

2

was Mrs. Barto's testimony that her roofing contractor told her the pitch of the roof is 1.5 inches per foot. Contrary to the Bartos' argument, Mr. Shevel did not testify he failed to check the pitch of the roof or that he was required to measure the slope of the roof using a tool designed for such purpose. In fact, Mr. Shevel testified he determined the pitch of the roof by a visual inspection based on his years of experience and that industry standards do not require him to measure the exact pitch of a roof. Sometime after the Bartos purchased the home, the roof leaked, causing damage.

{¶6} Consequently, the Bartos filed this action against Boardman and Mr. Shevel personally. In their first amended complaint, the Bartos alleged that they retained appellees to perform a home inspection and that appellees negligently failed to disclose that the roof of the home was defective because the roofing material was improper. They asserted two causes of action. In the first, the Bartos alleged appellees were negligent. In the second, they alleged the limitation-of-liability clause in the parties' contract, which limited the recovery of any damages sustained by the Bartos to the cost of the home inspection and report ($350), violated the Ohio Consumer Sales Practices Act. Appellees filed an answer, denying the material allegations of the amended complaint and asserting various affirmative defenses.

{¶7} After the parties completed discovery, Boardman and Mr. Shevel filed a motion for summary judgment and appellants filed a brief in opposition. The trial court granted the motion in part and denied it in part. With respect to the Bartos' claim for a violation of the Consumer Sales Practices Act, the court granted appellees' motion, finding that the parties' contract did not violate the Act. However, with respect to the Bartos' claim for negligence, the court denied the motion with respect to Boardman,

3

finding that a genuine issue of material fact existed regarding whether Boardman was liable in negligence based on Mr. Shevel's inspection, but that, pursuant to the parties' contract, the limit of Boardman's liability was $350. With respect to the Bartos' negligence claim against Mr. Shevel personally, the court granted appellees' motion for summary judgment, finding that Mr. Shevel, as agent for Boardman, could not be held liable for the debts of his principal and that there was no reason Mr. Shevel should be held personally liable. The court made the finding that there was no just cause for delay under Civ.R. 54(B), making its judgment final and appealable.

{¶8} The Bartos appeal the trial court's judgment, asserting the following for their sole assignment of error:

{¶9} "The trial court erred in granting appellees [sic] motion for summary judgment by finding that a limitation of damages provision in a consumer transaction does not violate the Ohio Consumer Sales Practices Act."

{¶10} Appellate courts review a trial court's grant of summary judgment de novo. *Alden v. Kovar*, 11th Dist. Trumbull Nos. 2007-T-0114 and 2007-T-0115, 2008-Ohio-4302, ¶34.

{¶11} In order for summary judgment to be granted, the moving party must prove that:

{¶12} (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385 (1996).

{¶13} [T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions

4

of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The "portions of the record" to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the * * * depositions, etc., that have been filed in the case. (Emphasis omitted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296 (1996).

{¶14} If the moving party satisfies its burden, then the nonmoving party has the burden to provide evidence demonstrating the existence of a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E).

{¶15} The Bartos argue the trial court erred in granting appellees' motion for summary judgment on the Bartos' claim under the Consumer Safety Practices Act because, the Bartos contend, the limit-of-liability clause in the contract is unconscionable and therefore violated the Act. The Bartos' reliance on *Bozich v. Kozusko*, 9th Dist. Lorain, No. 09CA009604, 2009-Ohio-6908, is misplaced because in that case the Ninth District was not asked to determine, and thus did not analyze, whether the limitation-of-liability clause was unconscionable. *Id.* at ¶10. In any event, more recently, in circumstances similar to those presented here, the Ninth District in *Green v. Full Service Property Inspections, LLC*, 9th Dist. Summit No. 26712, 2013-Ohio-4266, held that a limitation-of-liability clause in a home inspection contract was not unconscionable and thus did not violate the Consumer Sales Practices Act. *Id.* at ¶21. The Ninth District in *Green* succinctly set forth the law pertinent to a claim alleging a violation of the Act, as follows:

{¶16} "The Consumer Sales Practices Act prohibits unfair or deceptive acts and unconscionable acts or practices by suppliers in consumer transactions." *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29 (1990); R.C. 1345.02; R.C. 1345.03. "'[U]nconscionable acts or practices['] relate to a supplier manipulating a consumer's

5

understanding of the nature of the transaction at issue.["] *Whitaker v. M.T Automotive, Inc.*, 111 Ohio St.3d 177, 2006-Ohio-5481, ¶10, quoting *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, ¶ 24.

{¶17} "'Unconscionability includes both an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Crouse v. LaGrange Junction, Ltd.*, 9th Dist. Lorain No. 11CA010065, 2012-Ohio-2972, ¶8, quoting *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, ¶34. The Greens have the burden of establishing that the agreement is both procedurally and substantively unconscionable. *Id.* Procedural unconscionability pertains to the circumstances present when the parties were bargaining for the terms of the contract, "such as the parties' 'age, education, intelligence, business acumen and experience, who drafted the contract, whether alterations in the printed terms were possible, and whether there were alternative sources of supply for the goods [or services] in question.'" *Taylor* at ¶ 44, quoting *Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d 826, 834 (2d Dist.[1993]).

{¶18} Whether a contract is procedurally unconscionable is a question of law that this Court reviews de novo. *Bozich* [*supra,* at] ¶7. "A determination of unconscionability is a fact-sensitive question that requires a case-by-case review of the surrounding circumstances." *Featherstone v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 159 Ohio App.3d 27, 2004-Ohio-5953, ¶12 (9th Dist.). *Green, supra*, at ¶14-16.

{¶19} In *Green*, the appellants Mr. and Mrs. Green argued the trial court erred in granting summary judgment in favor of the home inspection company because, they argued, the limitation-of-liability clause in the contract, which limited the company's liability to the cost of the inspection, was unconscionable and thus violated the Consumer Sales Practices Act. However, in *Green*, the Ninth District noted the following facts: (1) the limitation provision was set off in a separate paragraph in the agreement. (2) Mrs. Green admitted that she read the contract before she signed it. (3) The home inspector did not pressure her to sign it. (4) She did not remember if the

6

inspector reviewed the contract with her or if she asked for clarification of any of the terms. (5) Mrs. Green acknowledged she and her husband could have hired another home inspector. (6) She also admitted that she could have declined to accept the contract if she did not agree with a term. In these circumstances, the Ninth District in *Green* held the transaction was not procedurally unconscionable and that, as a result, the limitation-of-liability clause did not violate the Consumer Sales Practices Act. *Id.* at ¶21.

{¶20} The Ninth District's holding in *Green* applies with greater force here due to the existence of the following circumstances: (1) The limitation-of-liability clause was set off in the agreement as a separate paragraph. (2) Mrs. Barto said that before she signed the contract for her and her husband, Mr. Shevel reviewed and explained it to them. (3) Although the agreement stated in large font and in all capital letters at the beginning of the contract, "PRE-INSPECTION AGREEMENT (PLEASE READ CAREFULLY)," Mrs. Barto said she just "skimmed over" the agreement and did not "fully" read it. (4) Mrs. Barto said that Mr. Shevel did not try to rush her through reading the agreement. (5) She said he did not prevent her from asking questions about it. (6) She said that Mr. Shevel did not refuse to answer any questions she had about it. (7) There is no evidence the Bartos were deprived of an opportunity to negotiate more favorable terms, including the exclusion of the limited liability provision, or to hire another home inspector.

{¶21} Based on our review of the record, there is no evidence that the transaction between the parties was procedurally unconscionable. Because the Bartos failed to demonstrate the existence of a genuine issue of material fact regarding

whether the subject transaction was procedurally unconscionable, this Court need not consider whether the provision limiting liability was substantively unconscionable. *Green, supra*, at ¶21, citing *Crouse, supra*, at ¶17. Further, based on the evidence submitted, the trial court did not err by impliedly concluding that Boardman did not manipulate the Bartos' understanding of the nature of the transaction at issue such that it violated the Consumer Sales Practices Act. *Whitaker, supra*, at ¶10.

**{¶22}** Next, the Bartos argue the trial court erred in entering summary judgment against them on their negligence and consumer sales practices claims against Mr. Shevel. Appellants concede there is no evidence in the record supporting a veil-piercing theory of liability against Mr. Shevel based on his control of Boardman. Rather, appellants argue Mr. Shevel is liable for his own acts of negligence and his own violation of the Consumer Sales Practices Act.

**{¶23}** With respect to appellants' claim against Mr. Shevel alleging a violation of the Consumer Sales Practices Act, because we hold the limitation-of-liability provision at issue here does not support such claim, the trial court did not err in concluding that, as a matter of law, Mr. Shevel could not be held personally liable for a violation of the Act.

**{¶24}** However, with respect to the Bartos' claim for negligence, the trial court found there was a genuine issue of material fact concerning whether Boardman was liable in negligence based on Mr. Shevel's performance of his inspection. Obviously, the Bartos do not appeal this finding. However, the court found that since Mr. Shevel is Boardman's agent, he cannot be personally liable on such claim. It is this finding that the Bartos appeal. In support of this finding, the trial court relied on the principle of

8

agency law that a corporation's agent is generally not liable for the debts of the corporation.

{¶25} We agree with the trial court's finding that Mr. Shevel cannot be held personally liable to appellants. This court in *Olzens v. Lapuh*, 11th Dist. Lake No. 2007-L-119, 2008-Ohio-4303, stated:

> {¶26} As the court in *James G. Smith & Associates, Inc. v. Everett*, 1 Ohio App. 3d 118 (10th Dist.1981), explains:

> {¶27} "[B]y incorporating his business, a person may escape liability for debts of the business, under certain circumstances. Whether or not he will escape personal liability for debts of the business is most often a question for the law of agency. A corporation, being an artificial person, can act only through agents. When a person incorporates his business and proceeds to conduct business on behalf of the corporation, he is acting as an agent for the corporation. But like any other agent, he may still incur personal liabilities. Thus, he will avoid personal liability for debts of the corporation only if he complies with the rules which apply in all agency relationships -- he must so conduct himself in dealing on behalf of the corporation with third persons that those persons are aware that he is an agent of the corporation and it is the corporation (principal) with which they are dealing, not the agent individually." *Id.* at 120.

> {¶28} As the court in *Ever*ett summarized, there are several circumstances where the courts held an agent personally liable to the persons with whom he deals. An agent is liable (1) "[w]here the principal is only partially disclosed, i.e., where the existence of agency is known to the third person, but the identity of the principal is not known." *Id.* An agent is liable (2) "[w]here the principal is undisclosed, i.e., where neither the existence of an agency nor the identity of the principal is known to the third party." *Id.* "Here, the dealing is held to be between the agent and the third party, and the agent is liable." *Id. Olzens, supra,* at ¶44-46.

{¶29} As evidenced by the Pre-Inspection Agreement, appellants hired Boardman, not Mr. Shevel, to perform a home inspection. Moreover, appellants were aware that Mr. Shevel was an agent of Boardman and that the Pre-Inspection

9

Agreement was between appellants and Boardman, not Mr. Shevel. Thus, as a matter of law, Mr. Shevel is not personally liable for his acts performed as an agent for Boardman.

{¶30} In summary, the trial court did not err in concluding there was no genuine issue of material fact regarding the Bartos' Consumer Sales Practices Act claim and in entering summary judgment on that claim in favor of appellees. Moreover, the court did not err in entering summary judgment in favor of Mr. Shevel on appellants' negligence claim because, pursuant to the parties' contract, appellants hired Boardman and Mr. Shevel cannot be held personally liable for those acts he performed as an agent for Boardman.

{¶31} For the reasons stated in the Opinion of this court, the assignment of error is overruled. It is the order and judgment of this court that the judgment of the Trumbull County Court of Common Pleas is affirmed.

TIMOTHY P. CANNON, P.J.,

DIANE V. GRENDELL, J.,

concur.

10