[Cite as *Orum Stair, L.L.C. v. GJJG Ents., L.L.C.*, 2016-Ohio-7064.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Orum Stair, LLC, | : | |
| Plaintiff-Appellee/<br>Cross-Appellant, | : | |
| | : | No. 15AP-507 |
| v. | | (C.P.C. No. 12CV-9835) |
| | : | |
| GJJG Enterprises, LLC, et al., | | (REGULAR CALENDAR) |
| | : | |
| Defendants-Appellants/<br>Cross-Appellees. | : | |

D E C I S I O N

Rendered on September 29, 2016

**On brief:** *Onda LaBuhn Rankin & Boggs Co., LPA, Patrick H. Boggs* and *Gregory A. Goetz,* for appellants/cross-appellees GJJG Enterprises, LLC and James W. Finn. **Argued:** *Gregory A. Goetz.*

**On brief:** *Madison & Rosan, LLP, Kristin E. Rosan* and *Darcy A. Shaffer,* for appellee/cross-appellant Orum Stair, LLC. **Argued:** *Kristin E. Rosan.*

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Defendant-appellants/cross-appellees, GJJG Enterprises ("GJJG"), and James W. Finn ("Finn" or collectively "appellants"), and plaintiff-appellee/cross-appellant, Orum Stair, LLC ("Orum Stair"), filed notices of appeal from the Franklin County Court of Common Pleas' decisions which granted Orum Stair's summary judgment motion and awarded it damages and granted appellants' motion to vacate lien. For the following reasons, we affirm the judgments.

**I. Facts and Procedural History**

{¶ 2}  GJJG and ERA Real Estate First, REALTORS, entered into a contract ("Listing Agreement") giving ERA Real Estate First, REALTORS an exclusive right to sell, lease or exchange a car wash owned by GJJG.  If successful, ERA Real Estate First, REALTORS was to earn a commission of $195 plus seven and one-half percent of the transaction price.  Finn and Glenn West ("West") signed the Listing Agreement.  ERA Real Estate First, REALTORS advertised the property and introduced Richard Hamel ("Hamel") to the property.  In March 2011, GJJG and Hamel entered into a real estate purchase agreement, but Hamel's attempt to purchase failed because he was unable to finance the purchase within the contingency period set forth in the contract. Subsequently, Hamel signed a three-year lease, from October 1, 2011 until December 1, 2014.  GJJG did not pay the commission.  On August 15, 2011, Orum Stair filed a broker's lien pursuant to R.C. 1311.86, based on its belief that Hamel had purchased the property.

{¶ 3}  On August 3, 2012, Orum Stair filed a complaint against GJJG, Finn, West, JWF Family, LLC,[1] the Franklin County Treasurer, and the Department of the Treasury, Internal Revenue Service, to foreclose on the real estate broker's lien it had filed and included claims for breach of contract and unjust enrichment arising out of the Listing Agreement.  Orum Stair asserted that GJJG sold the property to Hamel and that GJJG failed to pay the commission owed to Orum Stair.  In its answer, GJJG asserted that the property was leased, not sold, and GJJG was willing to pay the proper commission amount on the lease.

{¶ 4}  The trial court granted Orum Stair's motion for summary judgment against GJJG on November 14, 2013 for breach of contract finding that Orum Stair is entitled to its commission on the lease of the property. The trial court referred the case to a magistrate to conduct a damages hearing.  At the damages hearing, the issue of standing arose.  ERA Real Estate First, REALTORS executed the Listing Agreement and Orum Stair filed the lawsuit.  Therefore, GJJG alleged that Orum Stair did not have standing to prosecute the action.

---

[1] Orum Stair dismissed the action against JWF Family, LLC.

{¶ 5}   GJJG filed a motion for reconsideration of the trial court's decision that granted Orum Stair's motion for summary judgment. Because of the issue of standing raised at the damages hearing, the trial court sua sponte ordered Orum Stair to show cause why the matter should not be dismissed for lack of standing.  Orum Stair argued that it is the successor entity by merger with Real Estate First, LLC and owned all the assets and property as the resulting company post-merger.

{¶ 6}   The magistrate determined after the damages hearing that Orum Stair was entitled to the payment of a commission under the Listing Agreement, and that the commission was due as of November 6, 2011, the day GJJG and Hamel executed the lease agreement.  The magistrate found the total transaction price for the lease was $92,062.40 and awarded seven and one-half percent commission, or $6,904.68, plus a flat fee of $195, for a total of $7,099.68.  The magistrate also awarded attorney fees and costs in the amount of $14,043 and $525 in expert witness fees to Orum Stair.

{¶ 7}   Orum Stair filed a motion to correct the magistrate's decision on damages nunc pro tunc arguing that the magistrate should have used $118,562.40, rather than $92,062.40 as the transaction price to determine the commission.  GJJG filed objections to the magistrate's decision.

{¶ 8}   The trial court found that Orum Stair had standing to prosecute the action because it had previously merged with Real Estate First, LLC.  Thus, Orum Stair possessed all assets and property of the two entities.  However, the trial court found that Orum Stair was operating under a trade name filed for a different company and did not have the capacity to sue.  Lack of capacity is an affirmative defense that GJJG waived by not asserting it specifically in its answer.

{¶ 9}   The trial court overruled GJJG's objections to the magistrate's decision, denied Orum Stair's motion for attorney fees, and modified the magistrate's decision awarding Orum Stair damages.   GJJG filed a motion to vacate the broker's lien filed by Real Estate First, LLC.  The trial court vacated the broker's lien.

{¶ 10} The trial court granted Orum Stair leave to file a summary judgment motion against Finn and West. Finn filed a memorandum contra and cross-motion for summary judgment. The trial court granted Orum Stair's motion for summary judgment on its

breach of contract claim against Finn and West finding that they signed the Listing Agreement in their individual capacity.

## II. Assignments of Error

{¶ 11} GJJG and Finn[2] filed a timely notice of appeal and raised the following assignments of error:

> I. THE TRIAL COURT ERRED IN HOLDING THAT ORUM STAIR HAD STANDING TO BRING THE UNDERLYING LAWSUIT.
>
> II. THE TRIAL COURT ERRED IN OVERRULING APPELLANT, GJJG ENTERPRISES, LLC'S OBJECTIONS TO THE MAGISTRATE'S DECISION AWARDING ATTORNEY FEES TO ORUM STAIR.
>
> III. THE TRIAL COURT ERRED IN ENTERING JUDGMENT AS A MATTER OF LAW IN FAVOR OF ORUM STAIR AND AGAINST APPELLANT, JAMES W. FINN, IN HIS INDIVIDUAL CAPACITY.

{¶ 12} Orum Stair also filed a timely notice of cross-appeal and raised the following assignments of error:

> 1. THE TRIAL COURT ERRED WHEN IT FAILED TO AWARD CROSS-APPELLANT ITS ADDITIONAL ATTORNEY FEES INCURRED.
>
> 2. THE TRIAL COURT ERRED WHEN IT VACATED THE BROKER LIEN.

## III. Discussion

{¶ 13} By the first assignment of error, GJJG and Finn contend that the trial court erred in finding that Orum Stair had standing to bring the underlying suit. GJJG argues that Orum Stair does not have standing because ERA Real Estate First, REALTORS executed the Listing Agreement and Orum Stair filed the lawsuit. "It is fundamental that a party commencing litigation must have standing to sue in order to present a justiciable controversy and invoke the jurisdiction of the common pleas court." *Davet v. Sheehan*, 8th Dist. No. 101452, 2014-Ohio-5694, ¶ 22, citing *Fed. Home Loan Mtge. Corp. v.*

---

[2] West did not file a notice of appeal.

*Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, ¶ 41.  "Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy."  *Id.*  A party has standing if it is a real party in interest, which is an individual who has suffered an injury in the matter at hand.  *Mousa v. Mt. Carmel Health Sys.*, 10th Dist. No. 12AP-737, 2013-Ohio-2661, ¶ 12.

{¶ 14} "Whether standing exists is a question of law that an appellate court reviews de novo."  *Taneff v. HCR ManorCare, Inc.*, 9th Dist. No. 27554, 2015-Ohio-3453, ¶ 8, citing *State ex rel. N. Ohio Chapter of Associated Builders & Contractors, Inc. v. Barberton City School Dist. Bd. of Edn.*, 188 Ohio App.3d 395, 2010-Ohio-1826, ¶ 10 (9th Dist.).  Similarly, an appellate court reviews a trial court's grant of summary judgment de novo.  *Reed v. Davis,* 10th Dist. No. 13AP-15, 2013-Ohio-3742, ¶ 9.  In reviewing a trial court's disposition of a summary judgment motion, an appellate court applies the same standard as the trial court and conducts an independent review without deference to the trial court's determination.  *Maust v. Bank One Columbus, N.A.,* 83 Ohio App.3d 103, 107 (10th Dist.1992).

{¶ 15} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, transcripts of evidence, and written stipulations of facts, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Thus, summary judgment is appropriate when: (1) there is no genuine issue of material fact remaining to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party.  *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 16} J. Bradley Stair testified by affidavit that Real Estate First, LLC entered into the Listing Agreement with GJJG.[3]  (*See* Mar. 13, 2014 Stair Aff. at ¶ 15.) The Listing Agreement provides that ERA Real Estate First, REALTORS entered into the Listing Agreement. Orum Stair Residential Brokerage of Ohio, LLC, filed with the Secretary of

---

[3]He had previously testified in an affidavit that "Orum Stair, LLC" entered into the Listing Agreement. (Sept. 10, 2013 Stair Aff. at ¶ 5.)

State "ERA Real Estate First" as a trade name. The Licensing Manager for the Ohio Division of Real Estate and Professional Licensing, Kathy Clark, testified via affidavit, "Orum Stair Residential Brokerage of Ohio, LLC lapsed by operation of law on March 31, 2010" and "Orum Stair Residential Brokerage of Ohio, LLC, never had a d/b/a of ERA Real Estate First, REALTORS." (Mar. 25, 2014 Clark Aff. at ¶ 7, 9.) Thus, a licensed real estate brokerage with the name "Orum Stair" did not exist in December 2010 at the time the parties signed the Listing Agreement. (Clark Aff. at ¶ 10.)

{¶ 17} In April 2011, Orum Stair, LLC, merged into Real Estate First, LLC, and the surviving entity's name is Orum Stair, LLC. (Mar. 13 2014 Stair Aff., Ex. 8.) "ERA" and "REALTORS" are registered trademarks of ERA Franchise Systems, LLC, and the National Association of Realtors. J. Bradley Stair asserted that in December 2010, Real Estate First, LLC had permission to use the "ERA" and "REALTORS" registered trademarks.

{¶ 18} Thus, Orum Stair argues that it has standing to prosecute this action by virtue of Real Estate First, LLC using the "ERA" and "REALTORS" trademarks and entering into the Listing Agreement with GJJG and the merger between Orum Stair and Real Estate First resulting in Orum Stair possessing the assets of the merged companies.

{¶ 19} Pursuant to R.C. 1701.82(A)(3), the company surviving a merger "possesses all assets and property of every description, and every interest in the assets and property * * * of each constituent entity." Thus, Orum Stair owned all assets, property, and the interest in assets and property owned by Orum Stair and Real Estate First. Jack Orum, who signed the Listing Agreement, and J. Bradley Stair were both members of Orum Stair, and formerly Real Estate First, LLC and Orum Stair Residential Brokerage of Ohio, LLC. J. Bradley Stair testified via affidavit that Real Estate First, LLC, had permission to use the "ERA" and "REALTORS" registered trademarks. (Mar. 13, 2014 Stair Aff. at ¶ 18.)

{¶ 20} Furthermore, Jack Orum signed the Listing Agreement and he was a licensed real estate agent with Real Estate First, LLC as of March 31, 2010. (Mar. 25, 2014 Clark Aff. at ¶ 6.) J. Bradley Stair testified, via affidavit, that he and Jack Orum are both members of Orum Stair, and formerly Real Estate First, LLC and Orum Stair Residential Brokerage of Ohio, LLC. As stated above, standing refers to a party who has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that

controversy. *Schwartzwald* at ¶ 21. Here, Jack Orum and J. Bradley Stair both have a sufficient stake in the controversy and have standing.

{¶ 21} However, as the trial court held, Orum Stair lacked capacity to sue in this action. R.C. 1329.10(B) prohibits a person from maintaining an action in a trade name or fictitious name until it has complied with R.C. 1329.01. R.C. 1329.10(B) provides, as follows:

> No person doing business under a trade name or fictitious name shall commence or maintain an action in the trade name or fictitious name in any court in this state or on account of any contracts made or transactions had in the trade name or fictitious name until it has first complied with section 1329.01 of the Revised Code * * * but upon compliance, such an action may be commenced or maintained on any contracts and transactions entered into prior to compliance.

{¶ 22} R.C. 1329.01 provides the procedure to register a trade name with the Secretary of State. Thus, Real Estate First, LLC, was using trade names that were not properly registered to it because ERA Real Estate First, REALTORS was filed as a trade name of Orum Stair Residential Brokerage of Ohio, LLC. R.C. 1329.10(B) does not preclude the commencement of an action because business was transacted in an unregistered trade or fictitious name. *Frate v. Al-Sol, Inc.*, 131 Ohio App.3d 283, 287 (8th Dist.1999). The statute denies the user of an unregistered trade name the capacity to sue. *Id.*, citing *Buckeye Foods v. Cuyahoga Cty. Bd. of Revision*, 78 Ohio St.3d 459, 461 (1997). The failure to raise a plaintiff's lack of capacity to sue in an answer waives the issue. *New Method Textiles, Inc. v. TGI Friday's, Inc.*, 10th Dist. No. 93APG10-1360 (June 28, 1994). In this case, appellees did not raise lack of capacity in their answer and the trial court properly found that they had waived the issue. GJJG and Finn's first assignment of error is overruled.

{¶ 23} By their second assignment of error, GJJG and Finn contend that the trial court erred in overruling GJJG's objections to the magistrate's decision awarding attorney fees to Orum Stair. GJJG and Finn argue that Orum Stair should not recover the attorney fees it incurred in prosecuting its meritless claim for damages based on the attempted property sale when Orum Stair should have known that GJJG did not sell the property.

The trial court found it was unable to evaluate the magistrate's findings of fact because GJJG only submitted a partial transcript of the hearing. Thus, the trial court accepted the magistrate's findings of fact and reviewed only whether the magistrate properly applied the law to those facts.

{¶ 24} The magistrate found that the Listing Agreement provided for a commission of seven and one-half percent of the lease value plus $195. The lease agreement provided for base rent and additional rent. The base rent included monthly rent, which was set as $0 for the first year, $9,000 the second year, and $17,500 the third year. The additional rent included real estate taxes ($39,576), casualty insurance premiums ($11,039.40), maintenance expenses ($12,666), and utilities ($28,781). The magistrate found that the rent over the term of the lease consisted of $26,500 in base rent and $92,062.40 in additional rent. Thus, the magistrate awarded damages of $7,099.68 (7.5% x $92,062.40 + $195).

{¶ 25} The trial court found that the magistrate made a mathematical error and corrected it in its decision. The trial court found the total lease value was $118,562.40 ($26,500 in base rent + $92,062.40 in additional rent = $118,562.40, not $92,062.40.) The court multiplied $118,562.40 by 7.5 percent which equals $8,892.18 + $195 for a total award of $9,087.18 in compensatory damages. The trial court then awarded attorney fees of $14,043 and expert legal fees of $525 on the breach of contract claim. The trial court specifically declined to award fees incurred while demonstrating standing. The trial court found it unfair and unreasonable for GJJG to pay for the process of sorting out the many limited liability companies Mr. Stair created, especially since Orum Stair did not have the capacity to prosecute its action. The trial court further declined to award attorney fees on claims other than the breach of contract claim against GJJG. Finally, the trial court declined to award fees for Orum Stair's expert witness preparation time and time testifying when Orum Stair did not object to the magistrate's decision.

{¶ 26} GJJG and Finn argue that GJJG was always willing to pay the commission due to Orum Stair based upon a lease, but Orum Stair continually demanded a commission based upon a sale of the property. Thus, GJJG and Finn argue that the trial court should not require them to pay attorney fees based on a meritless claim.

{¶ 27} We review an award of attorney fees for an abuse of discretion. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Gibson v. Am. Inst. of Alternative Med.*, 10th Dist. No. 15AP-548, 2016-Ohio-1324, ¶ 115. GJJG and Finn are correct that a trial court should not award attorney fees for services on unsuccessful claims that are distinct from successful claims. *Luft v. Perry Cty. Lumber & Supply Co.*, 10th Dist. No. 02AP-559, 2003-Ohio-2305, ¶ 34, citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983). However, both the magistrate and the trial court noted that GJJG repeatedly admitted it was willing to pay the commission on the lease, yet had failed to pay even the uncontested amount. Here, the magistrate specifically awarded attorney fees and expert legal fees directly related only to the breach of contract claim. (Feb. 19, 2014 Mag.'s Decision at 11.) The trial court noted that the magistrate carefully considered the expert testimony in support of the fee award as well as the factors in Prof.Cond.R. 1.5. The trial court awarded the amount of attorney fees and expert witness fees that the magistrate found appropriate ($14,043 and $525).

{¶ 28} Here, we cannot say that the trial court abused its discretion. The trial court did divide the fees between claims. GJJG and Finn argue that Orum Stair's claim was unsuccessful because it was based upon the sale of the property and the entire lawsuit could have been avoided if Orum Stair had approached GJJG initially. However, as the trial court found, GJJG's actions do not support that argument since GJJG did not pay any of the commission, even the uncontested portion. GJJG and Finn's second assignment of error is overruled.

{¶ 29} In their third assignment of error, GJJG and Finn contend that the trial court erred in entering judgment as a matter of law in favor of Orum Stair against Finn, in his individual capacity. Orum Stair filed a motion for summary judgment against Finn and West arguing that they signed the Listing Agreement in their personal capacities. The trial court granted the motion finding that they signed the Listing Agreement in their personal capacity because neither noted their representative capacity when they signed the agreement.

{¶ 30} The Listing Agreement provides a one-year contract between ERA Real Estate First, REALTORS and the "Client" giving ERA Real Estate First, REALTORS an

exclusive right to sell the property on behalf of the Client. The contract provides that "[b]y signing this Agreement, Client warrants that it owns the Property, has the authority to enter into this Agreement and the authority to sell and convey the Property." GJJG argues that the Listing Agreement thus defines the "Client," as the owner of the property. However, other than this warranty, there is no definition of "Client" in the Listing Agreement.

{¶ 31} The Listing Agreement contains an area with handwritten "Client Information" identifying Finn and West. The Listing Agreement does not mention GJJG. Further, Finn and West signed the Listing Agreement without any designation as to their representation of GJJG.

{¶ 32} A corporation can only act through its agents. *James G. Smith & Assoc., Inc. v. Everett*, 1 Ohio App.3d 118, 120 (10th Dist.1981). An agent of the corporation can sign on behalf of the company and not be personally liable for the corporation's debt. *Pensco Trust Co. v. H&J Properties, LLC*, 8th Dist. No. 93826, 2010-Ohio-3610, ¶ 10, citing *Aungst v. Creque*, 72 Ohio St. 551 (1905). However, in order to avoid personal liability, the agent must "conduct himself in dealing on behalf of the corporation with third persons that those persons are aware that he is an agent of the corporation and it is the corporation (principal) with which they are dealing, not the agent individually." *James G. Smith & Assoc.* at 120. The Supreme Court of Ohio has held that when an officer of a corporation signs a promissory note without indicating the corporation's name, the officer binds himself personally. *Aungst* at 553. To avoid personal liability, the officer should provide the corporation's name, and his signature and position in the corporation. *Id.* at 554. However, the contract terms can override the signature. Where it is apparent from the note "that the true object and intent of its execution is to bind the principal, and not the agent, courts will adopt that construction of it." *Id.* at 555.

{¶ 33} In this case, despite GJJG and Finn's assertions, the contract does not explicitly define the client as GJJG. The contract provides that by virtue of the signature, the "Client" warranted that it owned the property and had the authority to sell it. Thus, as owner of the property, GJJG is liable for the breach of contract. However, as the trial court held, finding GJJG liable does not preclude Finn and West from also being liable. Finn and West did not indicate GJJG's name, did not indicate their status as officers in

the corporation, and completed the "Client Information" section with their personal information. These do not qualify as clear and unambiguous contract terms indicating Finn and West's status as agents and an intention to bind only GJJG.

{¶ 34} GJJG argues that the law of the case prohibited the trial court from finding Finn and West personally liable because the trial court had previously granted Orum Stair's motion for summary judgment and found GJJG breached the contract. However, the trial court had only considered whether GJJG breached the contract at that point, not whether GJJG, Finn, and West had breached the contract. Again, GJJG's status as liable does not preclude Finn and West from also being liable.

{¶ 35} The trial court found that Finn and West did not execute the Listing Agreement in a manner to limit their personal liability and the contract language was not sufficiently clear to bind only GJJG. After a thorough review of the Listing Agreement, we find no error in this finding. GJJG and Finn's third assignment of error is overruled.

{¶ 36} By its first cross-assignment of error, Orum Stair contends that the trial court erred when it failed to award it additional attorney fees. Orum Stair filed a motion for attorney fees and costs and the magistrate awarded $14,043 in attorney fees and $525 in expert witness fees. The magistrate declined to award $675 of the expert fees Orum Stair requested. Orum Stair did not file objections to the magistrate's decision.

{¶ 37} Subsequently, the trial court required Orum Stair to demonstrate it had standing. As a result of the additional briefing, Orum Stair sought an additional $12,361.07 in attorney fees and expenses, including the $675 denied by the magistrate ($11,400 in attorney fees, $961.07 in expenses and the additional $675 in expert witness fees). The trial court denied Orum Stair's amended motion for attorney fees and adopted the magistrate's award of $14,043 in attorney fees and $525 in expert fees. The trial court declined to award Orum Stair any further attorney fees from its motion filed May 7, 2014 and its amended motion filed on May 8, 2014.

{¶ 38} The trial court denied the expert witness fees because Orum Stair did not file any objections to the magistrate's decision. The trial court denied the additional fees and expenses because it found Orum Stair at fault for creating the standing issue.

{¶ 39} Orum Stair contends that the Listing Agreement provides that "[i]n the event Client fails to pay any compensation due to ERA Real Estate First, REALTORS

hereunder, Client agrees to pay all court costs and reasonable attorney fees incurred in collecting said compensation or other sums that may be due." (Listing Agreement at ¶ 18.) Thus, Orum Stair argues that the trial court erred in denying any of its attorney fees.

{¶ 40} An appellate court reviews the trial court's decision regarding attorney fees and costs utilizing an abuse of discretion standard. *Wells Fargo Bank, N.A. v. Odita*, 10th Dist. No. 13AP-663, 2014-Ohio-2540, ¶ 22. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983). The Supreme Court of Ohio has held that, " '[i]t is well settled that where a court is empowered to award attorney fees by statute, the amount of such fees is within the sound discretion of the trial court. Unless the amount of [attorney] fees determined is so high or so low as to shock the conscience, an appellate court will not interfere. ' " *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991), quoting *Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc.*, 23 Ohio App.3d 85, 91 (12th Dist.1985).

{¶ 41} Initially, we note that Orum Stair did not file objections to the magistrate's decision. In general, " 'a party is barred from raising any error on appeal connected with the trial court's adoption of a magistrate's finding of fact or conclusion of law unless that party timely objected to that decision.' " *Theodore. v. Theodore*, 10th Dist. No. 14AP-718, 2015-Ohio-2657, ¶ 5, quoting *Countrywide Home Loans, Inc. v. Caldero*, 8th Dist. No. 92381, 2009-Ohio-4999, ¶ 8. Further, GJJG only provided the trial court with a partial transcript of the damages hearings to support its objections. Without a transcript, a party " 'cannot challenge the factual findings of the magistrate's findings on appeal.' " *Id.*, quoting *Huffer v. Huffer*, 10th Dist. No. 12AP-883, 2013-Ohio-1575, ¶ 7. The trial court determined that given only a partial transcript, it was "unable to confidently address the magistrate's factual findings without the assurance that all relevant testimony" was before it. (Jan. 27, 2015 Decision at 5, citing *Black v. Columbus Sports Network, LLC*, 10th Dist. No. 13AP-1025, 2014-Ohio-3607, ¶ 15-20.) Thus, the trial court accepted the magistrate's findings of fact and reviewed whether the magistrate properly applied the law to those facts.

{¶ 42} In its amended motion for attorney fees, Orum Stair sets forth that the requested sum included the balance of the expert witness fees of $675 that the magistrate did not award. Since Orum Stair did not file objections to the magistrate's decision, it is barred from raising the issue on appeal.

{¶ 43} All of the remaining attorney fees and expenses requested accumulated after the magistrate's hearing on damages. The trial court considered these attorney fees and expenses and rejected them because the trial court found it unreasonable and unfair to order GJJG to pay for the process of determining standing since Orum Stair had created the confusion by creating so many limited liability companies. The trial court determined that since Orum Stair technically did not have capacity to sue it should bear its own attorney fees for creating the need to unravel that standing/capacity to sue issue.

{¶ 44} The trial court did adopt the magistrate's decision awarding fees accumulated through the damages hearing. In *Bittner* at 145, the Supreme Court of Ohio stated:

> Where, as here, the claims can be separated into a claim for which fees are recoverable and a claim for which no fees are recoverable, the trial court must award fees only for the amount of time spent pursuing the claim for which fees may be awarded.

{¶ 45} Here, the trial court did divide the award of fees and refused to award fees related to standing because those fees were not related to collecting the compensation due pursuant to the Listing Agreement. Since it was Orum Stair who did not have the capacity to sue, the trial court held that Orum Stair should bear its own attorney fees related to the standing/capacity to sue issue. The amount of attorney fees determined is not so high or so low as to shock the conscience, and thus, we will not interfere since the trial court did not abuse its discretion. Accordingly, based on the unique facts of this case, Orum Stair's first cross-assignment of error is overruled.

{¶ 46} By its second cross-assignment of error, Orum Stair contends that the trial court erred when it vacated its broker's lien. In August 2011, Orum Stair filed a broker's lien pursuant to R.C. 1311.86 and 1311.87 with the Franklin County Recorder's Office. The lien affidavit provides: "To the best of Broker's knowledge, the Owner has or will enter into a contract of sale or land installment contract to sell the Property for the price of

Three Hundred Ninety Thousand Dollars ($390,000, the 'Sale Price')." (Jan. 9, 2014 Mot. to Vacate Lien, Ex. A, Lien Aff. at ¶ 3.)  Orum Stair sought to enforce the lien and filed a foreclosure action together with its claims for breach of contract.  The trial court granted Orum Stair's motion for summary judgment on its breach of contract claim and awarded damages.  Then the trial court vacated the broker's lien finding that the lien was invalid because the requested commission was based on the sales contract between GJJG and Mr. Hamel.  Since Mr. Hamel did not secure financing and the purchase contract terminated, Orum Stair was not entitled to a broker's lien.

{¶ 47} On February 19, 2014, the magistrate issued a decision awarding Orum Stair the commission it was entitled to receive pursuant to the Listing Agreement, as well as attorney fees.  The trial court adopted this decision, although it amended the amount due to Orum Stair.  Pursuant to R.C. 1311.86(B)(3), "[t]he amount of a lien for services related to selling or conveying any interest in commercial real estate is limited to the amount due to the broker pursuant to the contract." Thus, R.C. 1311.86 provides that a lien is limited to the amount due pursuant to the contract.  Here, that amount was awarded in the judgment. Since Orum Stair received a judgment entitling it to the amount due pursuant to the contract, it cannot also recover pursuant to the broker's lien.  (*BFI Waste Sys. of Ohio v. Professional Constr. & Safety Servs.*, 9th Dist. No. 06CA008972, 2008-Ohio-1450, ¶ 9, the court applied general principle that "[p]arties should not be able to recover, or be required to pay, twice for the same performance" to unjust enrichment claim; *Brenner Marine, Inc. v. George J. Goudreau, Jr.*, 6th Dist. No. L-93-077 (Jan. 13, 1995), plaintiff is entitled to only single recovery of damages even though such plaintiff may be entitled to plead alternative theories of recovery.)  Thus, we decline to address the cross-assignment of error because it is moot.  "A matter is moot where a judgment is sought upon a matter which, when judgment is rendered, will not have any practical effect upon the issues raised by the pleadings."  *Witkowski v. Arditi*, 123 Ohio App.3d 26, 30 (7th Dist.1997).

## IV. Conclusion

{¶ 48} For the foregoing reasons, GJJG's three assignments of error are overruled, Orum Stair's first cross-assignment of error is overruled and Orum Stair's second cross-

assignment of error is rendered as moot.  The judgments of the Franklin County Court of Common Pleas are affirmed.

*Judgments affirmed.*

SADLER, J., concurs.
LUPER SCHUSTER, J., concurs in part and dissents in part.

LUPER SCHUSTER, J., concurring in part and dissenting in part.

{¶ 49} I concur with the majority's conclusions that the trial court did not err in (1) holding that Orum Stair had standing to bring this action (GJJG and James Finn's first assignment of error); (2) overruling GJJG's objections to the magistrate's decision awarding attorney fees to Orum Stair (GJJG and Finn's second assignment of error); and (3) not awarding Orum Stair additional attorney fees (Orum Stair's first cross-assignment of error).  However, I write separately as to those issues to emphasize the distinction between standing and capacity to sue.

{¶ 50} Standing is a jurisdictional requirement that a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy.  *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, ¶ 21-22. Because standing is jurisdictional, it cannot be waived.  *Gildner v. Accenture, L.L.P.*, 10th Dist. No. 09AP-167, 2009-Ohio-5335, ¶ 9.  "Standing in the jurisdictional sense is distinct from the issue of lack of capacity to sue, which is not jurisdictional."  *Bank of Am., N.A. v. Stewart*, 7th Dist. No. 13 MA 48, 2014-Ohio-723, ¶ 43, citing *Beaver Excavating Co. v. Testa*, 134 Ohio St.3d 565, 2012-Ohio-5776, fn. 1.  "Capacity to sue involves a determination as to whether an individual may properly sue, either as an entity or on behalf of another."  *Stewart* at ¶ 45.  Because capacity to sue is not jurisdictional, lack of capacity to sue is an affirmative defense that is waived if not timely asserted.  *JDI Murray Hill, LLC v. Flynn Properties, LLC*, 8th Dist. No. 94259, 2011-Ohio-301, ¶ 50. Considering the distinction between standing and capacity to sue, insofar as the majority's decision suggests that GJJG and Finn's waiver of Orum Stair's capacity to sue supports the trial court's holding that Orum Stair had standing to bring the action, I respectfully disagree.

{¶ 51} Moreover, I disagree with the majority's suggestion that the issue of whether Orum Stair had the capacity to sue was pertinent to whether the trial court abused its discretion in rejecting Orum Stair's request for additional attorney fees incurred litigating the standing issue. While I agree that the trial court's award of attorney fees was not an abuse of discretion, I reach that conclusion based on the trial court's reasonable finding that the expenses incurred relating to the standing issue were due to the necessity of sorting through the numerous limited liability companies J. Bradley Stair created, not because Orum Stair lacked the capacity to sue.

{¶ 52} As to GJJG and Finn's third assignment of error, I respectfully dissent from the majority's conclusion that the trial court did not err in entering judgment against Finn.[4] At issue is whether Finn agreed to be personally liable under the terms of the Listing Agreement. The majority finds that Finn and Glenn West are personally liable under the terms of the Listing Agreement because they did not, on the agreement, provide GJJG's name or their status as it relates to GJJG, and they completed the "Client Information" section with their personal information. I disagree.

{¶ 53} "A corporation, being an artificial person, can act only through agents." *James G. Smith & Assoc., Inc. v. Everett*, 1 Ohio App.3d 118, 120 (10th Dist.1981). When a person conducts business on behalf of a corporation, he is acting as an agent for the corporation. *Id.* However, the agent may still incur personal liability for the debts of the corporation, unless the agent "so conduct[s] himself in dealing on behalf of the corporation with third persons that those persons are aware that he is an agent of the corporation and it is the corporation (principal) with which they are dealing, not the agent individually." *Id.* Thus, an officer of a corporation is not personally liable on contracts for which his corporate principal is liable, unless he intentionally or inadvertently binds himself as an individual. *J.D.S. Properties v. Walsh*, 8th Dist. No. 91733, 2009-Ohio-367, ¶ 18. Whether a corporate officer is personally liable in a commercial business transaction depends on the "form of the promise and form of the signature." *Gray Printing Co. v. Blushing Brides, LLC*, 10th Dist. No. 05AP-646, 2006-Ohio-1656, ¶ 26, citing *Spicer v. James*, 21 Ohio App.3d 222, 223 (2d Dist.1985).

---

[4] The trial court also entered judgment against Glenn West, but, as the majority notes, he did not file a notice of appeal.

{¶ 54} Under the terms of the Listing Agreement, the "Client," as the owner of the property, must pay the commission. The Listing Agreement is a preprinted form contract, and some of the provisions only apply to the sale of residences. Because this matter involves a commercial property, the parties struck those provisions. Given the nature of the form, the "Client Information" section contemplates individuals as the typical client, with spaces for such information as social security numbers and employers. The majority concludes that the contract does not demonstrate the parties' intent to only bind GJJG, noting the contract is not clear and unambiguous as to this issue. I agree there is ambiguity in the contract. In particular, the Listing Agreement refers to the "Client" as "it," but the "Client Information" section sets forth West and Finn as the names of the "Client." Additionally, West and Finn executed the document by signing their names without providing any designation as to GJJG.

{¶ 55} To the extent the Listing Agreement is ambiguous as to the identity of the client, there is no dispute that all parties understood that GJJG was the owner of the property, the contract was between GJJG and the broker, and that West and Finn signed the document as agents of GJJG. J. Bradley Stair's August 12, 2011 Real Estate Broker's Lien Affidavit states that the broker agreement was entered with "GJJG Enterprises, LLC, an Ohio limited liability company, by and through James W. Finn and Glenn A. West (the 'Owner'), whom is the owner of" the commercial property. Thus, even though West and Finn did not indicate on the Listing Agreement their status in relation to GJJG, it is undisputed that the broker understood they were signing the contract on behalf of GJJG, the owner of the property. Consequently, only GJJG, and not West or Finn, was obligated to pay the broker commission. Because the mutual intent was to bind the broker and GJJG, as the owner of the property, I find that Finn is not personally liable for the obligations of GJJG under the Listing Agreement, and, therefore, I would sustain GJJG and Finn's third assignment of error and reverse the judgment of the trial court imposing liability on Finn.

{¶ 56} Finally, in regard to the majority's disposition of Orum Stair's second cross-assignment of error, which alleges that the trial court erred in vacating Orum Stair's broker lien, I am unconvinced that this assignment of error is moot. The majority decision states that because "Orum Stair received a judgment entitling it to the amount

due pursuant to the contract, it cannot also recover pursuant to the broker's lien." (Majority Decision at ¶ 47.) On this basis, the majority moots this assignment of error. While it is true that Orum Stair cannot recover twice for the same broker service, a holder of a broker's lien may seek the remedy of enforcing the lien through foreclosure proceedings. *See* R.C. 1311.89(A) (liens claimed under R.C. 1311.85 to 1311.93 are subject to R.C. 2323.07). Thus, insofar as vacating Orum Stair's broker's lien impacts its ability to collect the commission it is owed through foreclosure proceedings, the issue of whether it was error for the trial court to vacate the lien is not moot. Nonetheless, the broker's lien that Orum Stair recorded was based on a purchase agreement that was terminated due to the buyer's inability to obtain financing, and the amount of the commission asserted in the lien affidavit was significantly more than the amount to which Orum Stair is entitled as a result of GJJG's lease of the property. Therefore, the trial court did not err in vacating the recorded broker's lien. Accordingly, I would overrule Orum Stair's second cross-assignment of error.

———————————