JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} This appeal is before the Court on the accelerated docket pursuant to App. R. 11.1 and Loc. App. R. 11.1.
 {¶ 2} Plaintiff-appellant, J.D.S. Properties ("J.D.S."), appeals from the judgment of the common pleas court, which granted the motion for summary judgment of defendant-appellee, Frank A. Walsh, III ("Walsh"), and held that Walsh was not personally liable for the unpaid rent on a commercial lease. For the following reasons, we affirm the decision of the trial court.
 {¶ 3} A review of the record reveals the following facts: Walsh is the president of Alpha Risk Services, sometimes doing business as RiskLogic, both Ohio corporations. John D. Spielberger is the president of J.D.S. Properties, an Ohio corporation.
 {¶ 4} On October 9, 2001, J.D.S. and Walsh entered into a three-year lease ("the Lease") for commercial space in Rocky River, Ohio. The first page of the Lease identifies the lessor as John D. Spielberger, d.b.a. J.D.S. Properties, and the lessee as Alpha Risk Services, Frank Walsh III. The federal tax identification number of Alpha Risk is listed next to Alpha Risk's name. The terms of the Lease are set forth at pages 2 and 3, with the parties' signatures at the bottom of page 3. The signature lines read: John D. Spielberger, Lessor and Frank A. Walsh, III, Lessee. There is nothing in the Lease that explicitly *Page 4 
indicates that Walsh was president or was signing the Lease in his capacity as president of Alpha Risk.
 {¶ 5} On January 31, 2005, J.D.S. and Walsh signed an "Amendment to Lease Agreement" ("the Amendement"). The Amendment identifies the lessor as John D. Spielberger, d.b.a. J.D.S. Properties, and the lessee as Alpha Risk Services Inc., Frank Walsh III. The terms of the Amendment are set forth and the parties' signatures are at the bottom. The signature lines read: Lessor: J.D.S. Properties, followed by the signature of John D. Spielberger, and Lessee: Alpha Risk Services, Inc., followed by the signature of Frank A. Walsh, III. Again, nothing in the Amendment explicitly indicates that Walsh was president or was signing the Amendment in his capacity as president of Alpha Risk.
 {¶ 6} Sometime in 2005, Alpha Risk moved out of the space and stopped paying rent. On June 6, 2007, J.D.S. filed a breach of contract suit against Walsh in his individual capacity. Walsh's answer defended by claiming that he executed the Leases and the Amendment as the president of Alpha Risk, a disclosed principal, and was not personally liable.
 {¶ 7} On January 14, 2008, Walsh filed a motion for summary judgment arguing that he signed the lease agreements only in his capacity as president of Alpha Risk and that J.D.S. was aware of this fact at all times. In support, Walsh presented evidence that: (1) the first page of the original Lease named the Lessee as Alpha Risk with its federal tax number and not Walsh's social security *Page 5 
number; (2) all payments under the terms of the Lease were made by checks in the name of Alpha Risk or its trade name RiskLogic, not Walsh; (3) pursuant to paragraph 9 of the Lease, the Lessee was required to maintain a public liability insurance policy for the business, and this insurance policy was maintained in the name of Alpha Risk, not Walsh; (4) neither Walsh nor Spielberger identified the capacity in which they were signing the agreements; (5) an accounting sent by J.D.S. to Alpha Risk in 2007 bore only the name of Alpha Risk as tenant, not Walsh; and (6) a reimbursement for lease-related expenses was issued by J.D.S. to Alpha Risk, not Walsh.
 {¶ 8} J.D.S. filed a brief in opposition arguing that Walsh was individually liable under the contract, since Walsh did not sign the contract in his capacity as president or representative of Alpha Risk. J.D.S. also argued that since the contract was unambiguous, the trial court could not consider any of the extrinsic evidence provided by Walsh to determine the parties' intentions.
 {¶ 9} On June 3, 2008, the trial court granted Walsh's motion for summary judgment without opinion.
 {¶ 10} It is from this decision that J.D.S. now appeals and raises one assignment of error for our review, which states:
 {¶ 11} "I. The trial court erred in granting summary judgment in favor of the defendant Frank A. Walsh, III, specifically, finding that Frank A. Walsh, III *Page 6 
was not personally liable to the plaintiff for the debts incurred under a contract Frank A. Walsh, III personally signed."
 {¶ 12} In this assignment of error, J.D.S. claims that the trial court erred in granting summary judgment in favor of Walsh because genuine issues of material fact existed concerning his claim for breach of contract.
 {¶ 13} An appellate court reviews a trial court's grant of summary judgment de novo. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine if as a matter of law no genuine issues exist for trial." Brewer v. Bd. of Edn. (1997), 122 Ohio App.3d 378, citingDupler v. Mansfield Journal (1980), 64 Ohio St.2d 116, 119-120.
 {¶ 14} Summary judgment is appropriate where it appears that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v.Willis Day Warehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66; Civ. R. 56(C).
 {¶ 15} The burden is on the movant to show that no genuine issue of material fact exists. Id. Conclusory assertions that the nonmovant has no *Page 7 
evidence to prove its case are insufficient. The movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc., which affirmatively demonstrate that the nonmovant has no evidence to support his claims. Dresher v. Burt, 75 Ohio St.3d 280, 293,1996-Ohio-107; Civ. R. 56(C). Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant.
 {¶ 16} With these principles in mind, we proceed to consider whether the trial court's grant of summary judgment in favor of Walsh was appropriate.
 {¶ 17} J.D.S. argues that the trial court erred in finding that Walsh was not an actual party to the contract, and therefore not individually liable on the contract, since Walsh did not place his corporate title after his signature on the Lease and the Amendment. J.D.S. also argues that the trial court erred in admitting any evidence to show that the parties knew or intended otherwise.
 {¶ 18} An officer of a corporation is not personally liable on contracts for which his corporate principal is liable, unless he intentionally or inadvertently binds himself as an individual.Centennial Ins. Co. of New York v. Vic Tanny Internatl. of Toledo,Inc. (1975), 46 Ohio App.2d 137, 142; Spicer v. James (1985),21 Ohio App.3d 222; Hommel v. Micco (1991), 76 Ohio App.3d 690, 697;Heritage Funding Leasing Co. v. Phee (1997), 120 Ohio App.3d 422. *Page 8 
 {¶ 19} Whether a corporate officer can be held personally liable depends upon "the form of the promise and the form of the signature."Spicer, supra at 223. If there is a question as to whether a person signed a contract in an individual or corporate capacity, parol evidence is admissible to show representative capacity. Wise v. Duker (1988),57 Ohio App.3d 62, 63. An interpretation of an ambiguous term used in a contract is a question of fact and will not be reversed on appeal absent an abuse of discretion. Maines Paper Food Service, Inc. v. Eanes
(Sept. 28, 2000), Cuyahoga App. No. 77301.
 {¶ 20} Here, there was clearly a question as to whether Walsh signed the Lease and the Amendment in his individual capacity or solely in his capacity as the president of Alpha Risk. Although Walsh signed the Lease in his name, without indicating his corporate capacity, Alpha Risk is clearly designated as the Lessee on the first page of the Lease. Similarly, in the Amendment, Alpha Risk is designated as the Lessee in capital letters and J.D.S. is designated as the Lessor in capital letters, yet, the only signature lines are for Spielberger and Walsh. Notably, neither Spielberger nor Walsh signed the Amendment to show their representative capacity.
 {¶ 21} Accordingly, we find that the agreements at issue are ambiguous and subject to different interpretations. Since there was an ambiguity as to Walsh's intention to be bound personally on the agreement, the trial court did not err in admitting extrinsic evidence to demonstrate the parties' intentions. *Page 9 
 {¶ 22} Our review of the record shows that this extrinsic evidence, when construed in a light most favorable to J.D.S, shows that J.D.S. knew that Walsh was the president of Alpha Risk and considered Alpha Risk, not Walsh, to be its tenant. Specifically, (1) all rents were paid by checks in the name of Alpha Risk or its trade name, Risk Logic, not Walsh; (2) the public liability-insurance policy for the property was maintained solely in the name of Alpha Risk, not Walsh; (3) J.D.S. reimbursed Alpha Risk Services, not Walsh, for a lease-related expense; and (4) J.D.S. billed Alpha Risk, not Walsh, for unpaid rent. SeeMichael Benza Associates v. Joh-Mar Co. (Jan. 14, 1999), Cuyahoga App. No. 73875. J.D.S. did not rebut any of this evidence.
 {¶ 23} Accordingly, based on the evidence before the court, we find that the trial court did not abuse its discretion when it held that Walsh acted in his representative capacity and could not be held personally liable for the unpaid rent accrued by Alpha Risk. All of the dealings between the parties indicate that the contracts were between J.D.S. and Alpha Risk, and not Walsh individually.
 {¶ 24} J.D.S.'s sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. *Page 10 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, A.J., and JAMES D. SWEENEY, J.*, CONCUR
* SITTING BY ASSIGNMENT: JUDGE JAMES D. SWEENEY, RETIRED, OF THE EIGHTH DISTRICT COURT OF APPEALS. *Page 1