[Cite as *RYS Holdings, L.L.C. v. Virus Gaming Network, L.L.C.*, 2025-Ohio-2261.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

RYS Holdings, LLC

    Appellee

v.

Virus Gaming Network, LLC, et al.

    Appellants

Court of Appeals No. L-24-1239

Trial Court No. CI0202301345

**DECISION AND JUDGMENT**

Decided: June 27, 2025

* * * * *

Eugene F. Canestraro, Esq., for appellants.

Daryl K. Rubin, Esq., for appellee.

* * * * *

**MAYLE, J.**

{¶ 1} Appellant, Mohamad Nasser, appeals the September 16, 2024 decision of the Lucas County Court of Common Pleas granting judgment in favor of appellee, RYS Holdings, LLC. For the following reasons, we affirm.

## I. Background and Facts

{¶ 2} This case arose from a dispute over a commercial lease. In October 2019, lessor "RYS, LLC" and lessee "Virus Gaming Lounge LLC" entered into a three-year lease for space in a Toledo shopping center to be used as an "E Sports Gaming Lounge." In addition to signatures from a witness and a notary, the signature page of the lease shows that Jabbar Yousif signed on the line over "RYS, LLC." Yousif is the managing member of RYS Holdings. Nasser signed on the line over "Mohamad Nasser, Individually." Nasser is "the sole Officer / Member / Owner" of Virus Gaming Network, LLC ("Virus Network"), which formerly did business as Virus Gaming Lounge ("Virus Lounge"). Neither Nasser nor Yousif signed the lease a second time. The only other place Nasser is mentioned in the lease is in the section designating where to send notices.

{¶ 3} Throughout the case, there has been significant confusion about the identities of the businesses that were parties to the lease. The parties do not dispute that "RYS, LLC" and "Virus Gaming Lounge LLC"—the only two businesses mentioned in the lease—were not the actual names of their business entities. RYS, LLC was actually RYS Holdings, LLC, and Virus Gaming Lounge, LLC was actually Virus Gaming Network, LLC. While this case was pending, the parties registered the business names in the lease with the Ohio secretary of state. RYS Holdings registered "RYS, LLC" as a fictitious name, and Virus Network registered "Virus Gaming Lounge, LLC" as a trade name. In 2021, Virus Network registered "Virus Gaming Lounge"—without the "LLC"—as a trade name. The parties consented to the trial court taking judicial notice of

2.

the secretary of state filings. Michael Yousif, a manager for RYS Holdings and the person who drafted the lease, testified at his deposition that he used "Virus Gaming Lounge LLC" in the lease because it was the business name that Nasser provided. At his deposition, Nasser denied telling Michael or Yousif that Virus Gaming Lounge, LLC was the name of his business. Instead, he claimed that he gave Michael the correct name of Virus Gaming Network, LLC, but Michael put the wrong name in the lease.

{¶ 4} The parties do not dispute that no one made payments under the lease from October 2019 to January 2021, when Nasser returned the keys to RYS Holdings.

{¶ 5} RYS Holdings filed suit for the unpaid rent. In count one of its complaint, it alleged that it agreed to lease the space in the shopping center to Virus Lounge in October 2019 and claimed that Virus Network was doing business as Virus Lounge. After that, "Virus Gaming Network, LLC, d/b/a Virus Gaming Lounge, LLC" failed to pay rent as required by the terms of the lease and owed RYS Holdings a total of $36,700 for unpaid rent and fees. In count two of the complaint, which is titled "GUARANTY," RYS Holdings "reallege[d] and reaffirm[ed] each and every allegation as contained in Count One . . ." and claimed that "Mohammad Nassar [sic] executed the foregoing commercial lease on behalf of Virus Gaming Network, LLC., doing business as Virus Gaming Lounge, LLC and in an individual capacity and therefore is individually liable for those sums due and owing under said lease . . . ." In other words, RYS Holdings claimed that Nasser's single signature on the lease bound both Virus Network the business entity and Nasser, personally.

3.

{¶ 6} Before the parties submitted their secretary of state filings related to their business names, they each filed a motion for summary judgment. The trial court denied the motions because there were genuine issues of material fact regarding the registration statuses of the names RYS, LLC and Virus Gaming Lounge, LLC—i.e., it was unclear whether those names were registered with the secretary of state as trade names or fictious names or were not registered at all.

{¶ 7} After the trial court denied their motions for summary judgment, the parties submitted their secretary of state filings, and each filed a second motion for summary judgment. In its motion, RYS Holdings argued that Nasser was personally liable for the unpaid rent because he was acting as the agent for a "previously fictitious" principal, he did not object to or correct the lease naming "Virus Gaming Lounge, LLC" as the lessee, he signed the lease "Individually" and understood that he was signing in his personal capacity, and RYS Holdings "relied upon [Nasser's] representation that he would be individually liable on the contract . . . ."

{¶ 8} In their responses, Nasser and Virus Network admitted that Virus Network was liable for the unpaid rent and conceded that RYS Holdings was entitled to summary judgment on count one of the complaint. However, they argued that RYS Holdings was not entitled to summary judgment on count two, and, in fact, they were entitled to summary judgment on that count. They claimed that Nasser could not be personally liable for the unpaid rent because Virus Lounge was the only lessee in the lease; one of RYS Holdings's members identified the lessee as an Ohio limited liability company and

4.

knew that Nasser was an agent of the LLC; RYS Holdings wrote the lease with a single lessee, as shown by its use of the word "individually" after Nasser's name and the inclusion of only one signature line for Nasser to sign; the lease does not include a personal guaranty from Nasser; and, assuming that there were two obligors under the lease (i.e., Virus Lounge/Virus Network and Nasser were both supposed to be bound by its terms), the lease was improperly executed and violated the statute of frauds.

{¶ 9} In its decision on the second motions for summary judgment, the trial court granted RYS Holdings's motion in part, denied RYS Holdings's motion in part, and denied Nasser and Virus Network's motion. The court first found that RYS Holdings was able to maintain its contract claim against Virus Network and Nasser, despite its name not appearing in the lease, because it had registered RYS, LLC as a fictitious name, which enabled it to maintain an action on a contract made using the fictitious name. It went on to determine that (1) the lease was not ambiguous; (2) Nasser's signature—over the typewritten "Mohamad Nasser, Individually"—bound him personally but did not bind a "different, unnamed party"; (3) the form of Nasser's signature did not indicate that he was signing on behalf of a business entity, i.e., it did not include the name of the corporate principal, words of agency, or Nasser's corporate title; and (4) Virus Lounge being named as the lessee did not preclude Nasser from being individually liable under the lease, and the "inclusion of the word 'Individually' after [] Nasser's printed name renders the Lease unambiguous as to [] Nasser's individual obligations thereunder." Therefore, the court found Nasser liable for the unpaid rent.

5.

**{¶ 10}** As to Virus Network, the court found that the lease contained only one signature—Nasser's—and Virus Network did not sign the lease. The court found "no authority that would permit the subsequent registration of 'Virus Gaming Lounge, LLC' as a trade name to remedy the lack of signature formalities, and, indeed, the lack of any signature at all, for [] Virus Gaming Network, LLC, in the Lease." Because of that, the court determined that Virus Network could not be liable under the lease as a matter of law and denied RYS Holdings's motion on count one of the complaint and granted its motion on that part of count two.

**{¶ 11}** Regarding the claim against Virus Network in count two of the complaint, the court found that, despite RYS Holdings using the title "guaranty," the substance of the claim was that Nasser executed the lease on behalf of both himself and Virus Network (i.e., that one signature bound both defendants), not that Nasser was a guarantor of the lease, and denied RYS Holdings's motion as to that part of count two. The court also denied Virus Network and Nasser's motion for summary judgment on count two.

**{¶ 12}** The court later held a bench trial on the remaining claim in count two of the complaint, after which it determined that "Virus Gaming Network, LLC, was not a party to the lease entered into between RYS, LLC, a registered fictious name of [] RYS Holdings, LLC, and [] Mohamad Nasser, individually[,]" and dismissed the remaining claim.

**{¶ 13}** Nasser now appeals, raising four assignments of error:

6.

1. The Trial Court created reversible error in its Summary Judgment Order (overlooking the existence of a genuine and material fact) when it disregarded that Count One and Two of Plaintiff's Complaint designate an LLC as the Lessee and Count Two is styled and pled as a 'Guaranty'- fully reliant upon (and adopting) Count One of the Complaint. The error is made more obvious and manifest when the Trial Court Dismissed Count One of Plaintiff's Complaint on September 17, 2024.

2. The Trial Court created reversible error in its Summary Judgment Order (overlooking the existence of a genuine and material fact) when it found that Defendant's Motion for Summary Judgment was not well taken on account of contractual "Ambiguity" but found Plaintiff's Motion for Summary Judgment well-taken and free from "Ambiguity" when analyzing the very same contract (the commercial real estate lease at issue) and the pleadings.

3. The Trial Court created reversible error in its Summary Judgment Order (overlooking the existence of a genuine and material fact) when it refused to accept (ignored) Count Two of the Plaintiff's Complaint as pled, which claimed that the Defendant Virus Gaming Network, LLC (d/b/a Virus Gaming Lounge) was the identified Tenant and Mohamad Nasser a claimed lease "guaranty".

4. Since the Appellee dismissed the first Count of the Complaint, upon which the Second Count intentionally relies, a material fact exists {pursuant to the Pleadings and acceptable Civ. Rule 56 evidence} as to what the parties intended - thereby making summary judgment as granted, inappropriate.

## II. Law and Analysis

{¶ 14} In his assignments of error, Nasser argues that the trial court erred by granting RYS Holdings summary judgment because it (1) ignored genuine issues of material fact regarding the parties to the lease, their statuses, and their intent when they entered into the ambiguous lease; (2) found no ambiguity in the lease when it partially granted RYS Holdings's summary-judgment motion, but denied his summary-judgment motion based on contractual ambiguity; and (3) misinterpreted count two of the

7.

complaint by finding Nasser personally liable, despite RYS Holdings alleging that Nasser was only a guarantor. He also contends that the trial court abused its discretion when it "modified / altered the terms of Count Two . . . in order to satisfy the request of . . ." RYS Holdings's motion for summary judgment.

{¶ 15} In response, RYS Holdings argues that the trial court correctly granted summary judgment against Nasser because any ambiguity that might exist regarding the identity of the LLC that was supposed to be the lessee did not prevent the trial court from finding that Nasser bound himself separately and individually, the lease unambiguously shows that Nasser accepted personal liability under the lease, the trial court correctly interpreted count two of the complaint as seeking to impose personal liability on Nasser (rather than alleging that Nasser acted as a guarantor), and the court correctly determined that count two was not dependent on count one and Nasser's liability does not depend on Virus Network's liability.

{¶ 16} In his reply, Nasser reiterates that "critical and material facts remain in dispute concerning the intended Lessee, thus rendering summary disposition for [RYS Holdings] inappropriate/erroneous." In other words, because the lease is unclear about who the lessee was supposed to be, the trial court could not properly grant summary judgment against Nasser.

{¶ 17} We review summary judgment de novo, using the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996); *Lorain Natl. Bank v.*

8.

*Saratoga Apts.*, 61 Ohio App.3d 127, 129 (9th Dist. 1989). The court can grant a motion for summary judgment only when the moving party demonstrates:

> (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.

*Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978); Civ.R. 56(C).

{¶ 18} The party seeking summary judgment must specifically delineate the basis upon which the motion is brought and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996); *Mitseff v. Wheeler*, 38 Ohio St.3d 112 (1988), syllabus. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79 (1984). The opposing party must do so using "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact . . . ." Civ.R. 56(C). A "material" fact is one that would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304 (6th Dist. 1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 827 (8th Dist. 1996), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

9.

**{¶ 19}** In his brief, Nasser primarily takes issue with the trial court's interpretation of the lease between RYS, LLC and Virus Gaming Lounge, LLC, which Nasser signed "[i]ndividually." He contends that the lease is ambiguous—so we can consider parol evidence to interpret it—because it names an LLC as the lessee but only has a single signature from an individual, and that an issue of fact remains because the intended lessee is disputed.

**{¶ 20}** A lease is a contract, and, like any other contract, it must be construed to carry out the intent of the parties. *Tillimon v. Jankowski*, 1992 WL 114606, *2 (6th Dist. May 29, 1992). When we review a contract, we read the document as a whole and presume that the parties' intent is reflected in the document's language. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 11. However, if a contract's meaning cannot be determined from the four corners of the document, or if its language is susceptible to more than one reasonable interpretation, the contract is ambiguous. *LublinSussman Group LLP v. Lee*, 2018-Ohio-666, ¶ 20 (6th Dist.). Summary judgment is appropriate in a contract action when the contract is clear and unambiguous. *In re Miami Conservancy Dist.*, 2025-Ohio-116, ¶ 24 (2d Dist.). "But, where language is susceptible to differing but reasonable interpretations, the meaning of the words become[s] an issue of fact and summary judgment is not appropriate." *Id.*

10.

{¶ 21} Generally speaking, a corporate officer or agent is not personally liable for the corporation's contractual obligations as long as he discloses the principal he is working for, acts in the name of the principal, and acts within the scope of his authority. *James G. Smith & Assoc., Inc. v. Everett*, 1 Ohio App.3d 118, 120 (10th Dist. 1981). However, a corporate officer is personally liable for the corporation's obligations if he intentionally or inadvertently binds himself as an individual. *VP Consol. Holdings, Inc. v. Hunt*, 2009-Ohio-1129, ¶ 21 (6th Dist.), citing *Centennial Ins. Co. v. Vic Tanny Internatl.*, 46 Ohio App.2d 137, 142 (6th Dist. 1975). If the officer executes a contract in a way that indicates personal liability, he is personally liable under the contract, regardless of his intent. *The Big H, Inc. v. Watson*, 2006-Ohio-4031, ¶ 8 (1st Dist.), citing *Spicer v. James*, 21 Ohio App.3d 222, 223 (2d Dist. 1985).

{¶ 22} Whether an officer binds himself personally depends on the form of the promise and the form of the signature. *Lamar Advantage Group Co. v. Patel*, 2012-Ohio-3319, ¶ 19 (12th Dist.), citing *Spicer* at 223. "The typical format to avoid individual liability is 'company name, individual's signature, individual's position.'" *Big H* at ¶ 7, quoting *Aungst v. Creque*, 72 Ohio St. 551, 553-554 (1905); *Hursh Builders Supply Co. v. Clendenin*, 2002-Ohio-4671, ¶ 21 (5th Dist.), citing *George Ballas Leasing, Inc. v. State Sec. Serv., Inc.*, 1991 WL 280135, *2 (6th Dist. Dec. 31, 1991).

{¶ 23} Here, Nasser did not observe the necessary formalities to protect himself from personal liability. His signature block does not include the name of his principal (i.e., Virus Network or its trade name, Virus Lounge) or his position with the company.

11.

Additionally, the lease unambiguously shows that he signed "[i]ndividually." Whether Nasser was the intended lessee is immaterial; because of the way he signed the lease, he is liable for the unpaid rent whether he personally leased the property or not.

{¶ 24} In *Lamar*, the Twelfth District addressed a similar situation. There, Lamar and Patel entered into a contract for a billboard advertising a Motel 6. "Motel 6" was written in the spaces for "customer name" and "advertiser," and Patel's name was written in the space for "contact person." *Lamar* at ¶ 15. The signature page included a section indicating that a designated person was authorized to sign for the advertiser; the line for this person's name was blank. *Id.* at ¶ 16. Underneath that section was a signature line for "customer/advertiser," which was blank. *Id.* Patel signed his name—and nothing else—on the signature line for "customer/advertiser by." *Id.*

{¶ 25} After Patel and Motel 6 defaulted, Lamar obtained summary judgment against Patel personally for the amount due under the contract. On appeal, Patel argued that he was not personally liable because "he signed as an agent for the 'customer/advertiser,' which was 'unambiguously identified throughout the contract as Motel 6'" and the use of "Motel 6" implicated Shine Hospitality, LLC, which did business under the fictitious name Motel 6. *Id.* at ¶ 17. The Twelfth District upheld the trial court's decision finding Patel personally liable. It found that Patel "fell far short" of meeting the requirements to sign on behalf of a principal because "neither Motel 6 nor Shine Hospitality, L.L.C. precedes Patel's sole signature, even though they are the purported principals in the action[,]" the signature line for the customer/advertiser was

12.

left blank, and "perhaps more importantly, after entering his signature, Patel failed to note any official capacity or position in which he was signing the contract." *Id.* at ¶ 20. The court ultimately concluded that "[w]hile page one of the agreement references the 'Motel 6,' the remainder of the contract, and especially Patel's signature, does not convince us that Patel intended to act as a corporate agent for Motel 6, Shine Hospitality, L.L.C., or any other alleged corporate entity." *Id.* at ¶ 22.

{¶ 26} The lease in this case shows more definitively than the contract in *Lamar* that Nasser bound himself personally. Although the contract purported to be between RYS Holdings and Virus Lounge (the trade name of Virus Network), Nasser signed over a line naming *him* and specifically designating that he was signing "[i]ndividually," without any words of agency (like the "by" in the *Lamar* contract). In contrast, Yousif— who also failed to include his corporate position or any words of agency with his signature—signed over a line naming "RYS, LLC" (the fictitious name of RYS Holdings). This clearly and unambiguously shows that the lease meant to make Nasser personally liable. "A plain and unambiguous contract does not become ambiguous simply because its operation will work a hardship upon one of the parties and a corresponding advantage to the other. . . . It is not the province of courts to relieve parties of improvident contracts. . . . '[C]ourts are powerless to save a competent person from the effects of his own voluntary agreement.'" *Miami Conservancy Dist.*, 2025-Ohio-116, at ¶ 23 (2d Dist.), quoting *Dugan & Meyers Constr. Co., Inc. v. Ohio Dept. of Adm. Servs.*, 2007-Ohio-1687, ¶ 29.

13.

{¶ 27} Nasser cites *J.D.S. Props. v. Walsh*, 2009-Ohio-367 (8th Dist.), to support his argument that the lease is ambiguous, but that case is distinguishable. In *J.D.S. Props.*, the lease and lease amendment identified "Alpha Risk Services, Frank Walsh III" as the lessee, and the lease included Alpha Risk's tax identification number. *Id.* at ¶ 4-5. The signature line of the lease said, "Frank A. Walsh, III, Lessee." *Id.* at ¶ 4. The signature line of the amendment said, "Lessee: Alpha Risk Services, Inc., followed by the signature of Frank A. Walsh, III." *Id.* at ¶ 5. The Eighth District found that the lease and amendment were ambiguous because they "clearly designated" Alpha Risk as the lessee but only had a signature line for Walsh, and neither Walsh nor the representative for the lessor signed the documents in a way that indicated that they were signing in a representative capacity. *Id.* at ¶ 20.

{¶ 28} Here, unlike in *J.D.S. Props.*, there is absolutely no indication in the body of the lease that anyone other than Virus Lounge might be the named lessee, Nasser's signature specifically says that he signed "[i]ndividually," and the signature block does not raise even the possibility that Nasser was signing on behalf of a corporate entity. Therefore, *J.D.S. Props.* does not support Nasser's contention that an issue of fact remains.

{¶ 29} Nasser also argues that the trial court only reached its conclusion that no genuine issues of material fact remained because it, "without request or agreement of the parties, ignored and later modified / altered the terms of Count Two of [RYS Holdings's] Complaint . . ." by "remov[ing] the claim that [Virus Lounge] was the tenant." There is

14.

no indication that the trial court did this. Even if it had, as we have discussed, Nasser's liability under the lease does not depend on a finding that he, personally, was the intended tenant.

{¶ 30} Because the lease unambiguously shows that Nasser signed the contract in his individual capacity, any dispute over the intended tenant is not material to finding that Nasser is personally liable, and the trial court did not rewrite the complaint to reach its decision, RYS Holdings is entitled to summary judgment against Nasser. Therefore, Nasser's assignments of error are not well-taken.

### III. Conclusion

{¶ 31} Based on the foregoing, the September 16, 2024 judgment of the Lucas County Court of Common Pleas is affirmed. Nasser is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See, also,* 6th Dist.Loc.App.R. 4.

| Thomas J. Osowik, J. | |
| --- | --- |
| | JUDGE |
| Christine E. Mayle, J. | |
| | JUDGE |
| Gene E. Zmuda, J. CONCUR. | |
| | JUDGE |

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.